**CULLMAN VENTURES, INC., Plaintiff,**

v.

**COLUMBIAN ART WORKS, INC., Defendant.**

**No. 89 Civ. 312 (KC).**

United States District Court, S.D. New York.

June 16, 1989.

As Corrected June 26, 1989.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Moses Silverman, John J. Sullivan and Maria Vullo, of counsel), for plaintiff.

Robin, Blecker & Daley, New York City (Albert Robin, of counsel), and Cook & Egan, Chicago, Ill. (Donald E. Egan, of counsel), for defendant.

## TABLE OF CONTENTS

page
I. FINDINGS OF FACT ..................................................100
 A. The Parties .....................................................100
 B. The Trademarks in Issue .........................................101
 C. CAW's Usage of the Term At-A-Glance ............................104
 1. The 2 in 1 Executive's Calendar ..............................105
 2. The Success Weekly Calendar...................................105
 3. The Three Months at-a-Glance Wall Calendar ...................107
 4. The Loose Leaf or Daily Date Wall Calendar....................107
 5. No. 85 Perpetucal ® Desk Calendar Refill ....................107
 6. No. 057-00 Calmanac® Banking Calendar........................108

| | | page |
|---|---|---|
| II. | LEGAL ANALYSIS | 111 |
| A. | The Right to the Trademarks | 111 |
| 1. | CAW Has Not Established Prior Use Under 15 U.S.C. § 1065 | 112 |
| a. | No Prior Trademark Rights | 113 |
| b. | Lack of Continuity | 115 |
| c. | Wall Calendars vs. Appointment Books or Diaries | 116 |
| 2. | CAW Has Failed to Prove Prior Use Under 15 U.S.C. § 1115(b)(5) | 117 |
| B. | Liability of CAW for Trademark Infringement | 118 |
| 1. | CAW Infringed The Incontestable At–A–Glance ® Trademarks On And With Respect To Appointment Books And Diaries | 119 |
| a. | At–A–Glance ® is a Strong Mark | 121 |
| (i). | Recognition of Strength by Competitors | 122 |
| (ii). | Consumer Recognition of At–A–Glance ® | 122 |
| (iii). | Direct Competitors Have Refrained From Using At–A–Glance ® | 123 |
| (iv). | Sheaffer Eaton's Policing of its At–A–Glance ® Trademarks | 124 |
| (v). | Sales and Advertising | 127 |
| b. | CAW's Mark are Identical to the At–A–Glance ® Trademarks | 127 |
| c. | Competitive Proximity | 129 |
| d. | Bridging the Gap | 130 |
| e. | Actual Confusion | 130 |
| f. | CAW's Bad Faith | 131 |
| g. | Quality of the Products | 131 |
| h. | Sophistication of Relevant Buyers | 131 |
| i. | Equity | 131 |
| 2. | CAW Has No Defense to Its Infringement On and With Respect to Appointment Books and Diaries | 132 |
| a. | CAW's Use of "At A Glance" is Not "Fair Use" | 132 |
| (i). | The At–A–Glance ® Trademarks are Suggestive: CAW Has No "Fair Use" Defense. | 133 |
| (ii). | CAW's Use of the At–A–Glance ® Trademarks In Connection with Appointment Books and Diaries is Trademark Use. | 133 |
| (iii). | CAW's Use of the At–A–Glance ® Trademarks In Connection with Appointment Books and Diaries Is Not Good Faith "Fair Use". | 133 |
| (iv). | There is No "Fair Use" Because Consumer Confusion is Likely. | 134 |
| (v). | CAW's Use of "At A Glance" in Its Catalogs | 134 |
| b. | CAW has No Equitable Defense with Respect to Appointment Books and Diaries | 134 |
| 3. | Cullman Is Not Entitled To Injunctive Relief Against CAW's Historic Use of the AT–A–GLANCE ® Trademarks on CAW's Products | 135 |
| III. | CONCLUSION | 136 |

OPINION AND ORDER *

CONBOY, District Judge:

## I. FINDINGS OF FACT

### A. The Parties

Plaintiff Cullman Ventures, Inc. ("Cullman") is a New York corporation with its executive offices at 767 Third Avenue, New York, New York. Through its Keith Clark Division, it is engaged in the manufacture and sale in interstate commerce of a variety of diary and calendar products. See Stipulation of Undisputed Facts in Part 5 of Pretrial Order ("Undisputed Facts") ¶ 1.

Defendant Columbian Art Works, Inc., ("CAW") is a Delaware corporation that maintains its executive offices at 5700 West Bender Court, Milwaukee, Wisconsin. It is engaged in the manufacture and sale in interstate commerce of desk and wall calendars, diaries, appointment books, and other record-keeping products. CAW does

* This is a corrected version of the Court's Opinion and Order dated June 16, 1989.

business in New York and operates a distribution facility in Newburgh, New York, which is within the Southern District of New York. Undisputed Facts ¶ 2.

In this action, plaintiff alleges that defendant: (a) has infringed and diluted plaintiff's At-A-Glance ® Trademarks; (b) falsely designated the origin of its products; and (c) engaged in unfair competition, intentional deception of the public and false and deceptive advertising and acts. This action involves claims arising under the Lanham Act, specifically, Sections 15, 32, 33 and 43, 15 U.S.C. §§ 1065, 1114, 1115 and 1125, Sections 133, 349, 350, 350-d, 368-d of the New York General Business Law, and the common law.

CAW defends upon the grounds that it is the prior user, that its use of the phrase "At A Glance" is not likely to cause confusion, that its use is a good faith descriptive use, and that although plaintiff's trademark registrations are valid, plaintiff has acquiesced in and is estopped to complain of defendant's use.

Plaintiff requests a judgment:

a. permanently enjoining defendant from

 (i) using "At-A-Glance" or any variation of that phrase with a time designation (*e.g.*, "Day-At-A-Glance", "Week-At-A-Glance", "A-Week-At-A-Glance", "Two-Weeks-At-A-Glance", "Month-At-A-Glance" or "Year-At-A-Glance") in any form or logo (*e.g.*, with or without capitalization or hyphenation) on any product; and

 (ii) using "At-A-Glance" or any variation of that phrase with a time designation (as described above) to advertise or promote any product;

b. ordering the destruction of all infringing articles in defendant's custody or control;

c. awarding plaintiff three times the profits realized by defendant from the sale of infringing products;

d. awarding plaintiff such damages, trebled, as it can show at trial;

e. awarding plaintiff its costs of bringing this action, including reasonable attorneys' fees; and

f. granting such other and further relief as is just and proper.

Defendant, by its answer, requests that the complaint be dismissed with costs, that the Court order cancellation of plaintiff's trademark registrations, pursuant to 15 U.S.C. § 1064(c), and that defendant have and recover of plaintiff its reasonable attorney fees.

By stipulation of the parties and order of the Court, dated March 7, 1989, the trial conducted on April 4, 5, 6, 10, 12, 13 and May 8 was limited to the issues of liability and entitlement to injunctive relief. It was agreed that if plaintiff prevailed, a separate trial on the issue of damages would be set for a later date.

B. *The Trademarks in Issue*

The "At-A-Glance ® business" was established by Nascon Service, Inc. ("Nascon") in New York. As the business exists today, it consists primarily of the manufacture and distribution of bound calendar books, which are appointment books, diaries, and the refills for those books. This line of bound calendar books is identified by the At-A-Glance ® trademark. Each dated product in the line is marked with the At-A-Glance ® trademark and a related trademark, such as Month-At-A-Glance ®, Week-At-A-Glance ® or Day-At-A-Glance ®. These trademarks are collectively referred to as the "At-A-Glance ® Trademarks." The At-A-Glance ® line also includes other related products such as address books, planners and wall calendars, which are identified by the At-A-Glance ® trademark. PX 201-37, 305.[1]

The first At-A-Glance ® product was introduced by Nascon in 1934. PX 289, at 7359, 7366, 7382; PX 292, at 7452, 7459, 7503. Eaton Paper Corporation ("Eaton") acquired Nascon in 1947 and the two At-A-Glance ® trademarks that had been reg-

---

1. Citations in the form "PX" refer to plaintiff's exhibits while "DX" refers to defendant's exhibits. The plaintiff's exhibits are listed numerically and the defendant's exhibits are listed alphabetically.

istered by that time were assigned to Eaton, which later registered additional At-A-Glance ® trademarks. PX 290, at 74; PX 292, at 7483. In 1968, Textron, Inc. ("Textron") acquired Eaton, and later merged Eaton with its Sheaffer pen business to form the Sheaffer Eaton Division of Textron ("Sheaffer Eaton"). Frantz 276–77.[2] The At-A-Glance ® Trademarks were assigned to Textron in 1968 which later registered the balance of the At-A-Glance ® Trademarks. Undisputed Facts ¶ 4.

In August 1987, Textron sold its Sheaffer Eaton Division to Gefinor, Inc., which incorporated this business as a wholly owned subsidiary, Sheaffer Eaton, Inc. The At-A-Glance ® Trademarks were assigned by Textron to the newly formed Sheaffer Eaton, Inc. Undisputed Facts ¶ 4; Frantz 276–77. In February 1988, Cullman purchased the At-A-Glance ® business from Sheaffer Eaton, Inc. and the At-A-Glance ® Trademarks were assigned to Cullman. PX 288; Undisputed Facts ¶ 4; Frantz 276–77; Hargrove 127–32.

The following trademarks appear on the Principal Register of the United States Patent and Trademark Office ("PTO"):

| Trademark | Current Reg. No. | Issue Date | Exhibit Number |
|---|---|---|---|
| At-A-Glance ® | 714411 | 4/25/61 | PX 289 |
| Day-At-A-Glance ® | 338509 | 9/08/36 | PX 290 |
| Day-At-A-Glance ® | 1269780 | 3/13/84 | PX 291 |
| Week-At-A-Glance ® | 338598 | 9/08/36 | PX 292 |
| Week-At-A-Glance ® | 1269782 | 3/13/84 | PX 293 |
| Month-At-A-Glance ® | 634044 | 9/04/56 | PX 294 |
| Month-At-A-Glance ® | 1269781 | 3/13/84 | PX 295 |

Undisputed Facts ¶ 3.

The applications for Registrations No. 338598 (PX 292) (Week-At-A-Glance ®) and No. 338509 (PX 290) (Day-At-A-Glance ®) were filed January 17, 1936, claiming continuous use in interstate commerce since the early part of January 1934 and January 1935 respectively. On September 8, 1936, the registrations were issued for use on "memorandum books and calendar books." These registrations were republished under Section 12(c) of the Lanham Act, 15 U.S.C. and 1062(c), in the fall of 1949.

The application for Registration No. 634044 (PX 294) (Month-At-A-Glance ®) was filed September 20, 1955, claiming continuous use in interstate commerce since March 27, 1953. The registration was issued on September 4, 1956 for use on "memorandum books and calendar books."

The application for Registration No. 741411 (PX 289) for At-A-Glance ®, without any time designation, was filed August 19, 1960, claiming continuous use in interstate commerce since January of 1934. This registration was in block letters (as compared with the other registrations which were in logo form) and was issued on April 25, 1961.

Pursuant to Section 15 of the Lanham Act, the following affidavits were filed with the PTO verifying that the At-A-Glance ®, Day-At-A-Glance ®, Week-At-A-Glance ® and Month-At-A-Glance ® trademarks were used for five consecutive years without being challenged either in Court or at the PTO:

| Trademark | Reg. No. | Section 15 Affidavit Filed | Exhibit Number |
|---|---|---|---|
| At-A-Glance ® | 714411 | 9/26/66 | PX 296 |
| Day-At-A-Glance ® | 338509 | 7/18/55 | PX 297 |
| Week-At-A-Glance ® | 338598 | 7/18/55 | PX 298 |
| Month-At-A-Glance ® | 634044 | 10/02/61 | PX 299 |

**2.** Citations in this form refer to trial witnesses and pages of the trial transcript.

These trademarks are, therefore, incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065. *See* Undisputed Facts ¶ 5.

On April 22, 1982, Cullman's penultimate predecessor, the Sheaffer Eaton Division of Textron, filed applications to amend their logo registrations for Day–At–A–Glance ®, Week–At–A–Glance ® and Month–At–A–Glance ®, changing the form or style of the mark from a vertical format to a horizontal format virtually identical to the present logo form. On October 12, 1982, the requested amendment to the Day–At–A–Glance ® registration was granted (PX 290); on September 28, 1982 the requested amendment to the Week–At–A–Glance ® registration was granted (PX 292); and on May 24, 1983, the requested amendment to the Month–At–A–Glance ® registration was granted (PX 294). Each of these amendments states that "[s]uch amendment has been entered upon the records of the Patent and Trademark Office and the said original registration [Nos. 338509, 338598 and 634044 respectively] should be read as so amended." On March 13, 1984, it appears that new registrations were issued as a result of these applications for amendment. These new registrations, Nos. 1269780 (PX 291), 126978 (PX 295) and 1269782 (PX 293) have not yet become incontestable as the requisite Section 15 affidavits could not be filed prior to March 13, 1989 on account of this litigation. This is, however, of no consequence because the original registrations, as amended, are incontestable and were not superseded.

During the past 55 years, At–A–Glance ® has become the "leading brand" of appointment books and diaries in the industry. H.C. Norris 628, 678; Williams 244; Hargrove 125. Wholesalers, retailers and consumers ask for the product by the At–A–Glance ® name. Williams 244–47; Flanagan 258–59.

The At–A–Glance ® Trademarks have always been displayed prominently on the At–A–Glance ® bound calendar books, in Sheaffer Eaton's (and now Cullman's) catalogs, on display fixtures in retail stores, and in advertisements. For example:

(a) The At–A–Glance ® trademark appears on every page or on every other page of virtually all bound calendar books in the At–A–Glance ® line, and the trademarks Day–At–A–Glance ®, Week–At–A–Glance ® or Month–At–A–Glance ® appear on the cover and fly sheet, PX 201–07, 305;

(b) The At–A–Glance ® Trademarks have been prominently displayed on virtually every page of the At–A–Glance ® catalogs of Cullman and its predecessors, PX 208–37;

(c) The At–A–Glance ® trademark is featured on display fixtures supplied by Cullman and its predecessors and used by retailers all over the country and is on the packaging for the product, PX 305, 233; and

(d) The At–A–Glance ® Trademarks have been featured in magazine advertising nationally and in millions of copies of wholesalers' catalogs, *e.g.*, PX 407, 412.

Since acquiring Keith Clark in 1976, Cullman, through its Keith Clark Division, has been a manufacturer of a wide variety of diary and calendar products under various trademarks. Prior to 1988, Keith Clark produced dated products under the Guilford ®, Ever Ready ® and Work–A–Day ® trademarks.

In late 1987 and early 1988, an asset acquisition was arranged whereby Cullman purchased the At–A–Glance ® business from Sheaffer Eaton, Inc. for "net book value of the assets plus $45 million" for an ultimate purchase price of about $54 million. Hargrove 127.

The primary physical asset was a production facility in Pittsfield, Massachusetts where the At–A–Glance ® line was produced and distributed. Hargrove 128. This facility was comprised of the building, the land and heavy machinery and equipment.

Cullman subsequently sold the facility as well as the bulk of the equipment for approximately $2 million, Hargrove 131, and integrated the production and distribution of the At-A-Glance ® line with its production and distribution organization for its other dated products. Hargrove 130. In addition, Cullman hired only two or three of the 300–350 people engaged in the manufacturing and marketing processes at Sheaffer Eaton. Hargrove 128–130. In effect, Cullman paid well over $40 million for the heart of the At-A-Glance ® business—the At-A-Glance ® Trademarks, and all that went with the At-A-Glance ® brand name, such as its strong position in the marketplace and its tremendous customer goodwill and following. Hargrove 131; H.C. Norris 750–751. In 1988, Keith Clark commenced manufacturing dated products under the At-A-Glance ® Trademarks while continuing its production under its other trademarks.

### C. *CAW's Usage of the Term At-A-Glance*

CAW (and its predecessor corporations) have manufactured calendar products for over 70 years. Undisputed Facts ¶ 6. H. Coleman Norris has been the Chief Executive Officer of CAW since 1972. Thomas W. Norris, his father, was the Chief Executive Officer of CAW from the 1930's until 1971 and continues to serve as a director of the company. Undisputed Facts ¶ 7.

Over the years and prior to Cullman's purchase of the At-A-Glance ® business, CAW had used the term "At A Glance" on or with respect to a few of its desk and wall calendars. Cullman's predecessors complained to CAW of CAW's usage of the term "At A Glance" in 1938, 1965 and 1976, PX 157–61, 162–66, 167–69, 171–73, but, no legal proceedings were instituted until the present action. Instead, this usage was "tolerated" by Cullman's predecessors primarily because it was limited to a small number of wall and desk calendars which Cullman's predecessors did not believe to be directly competitive with the At-A-Glance ® line. Frantz, 276–79, 356–57. Cullman asserts that this usage can no longer be tolerated due to the recent widespread and wholesale infringement by CAW of the At-A-Glance ® Trademarks on CAW's 1989 Appointbook ® line, a line which *is* in direct head-on competition with the At-A-Glance ® line.

The 1989 products went on sale in late 1988 and were discovered by Cullman in early November 1988. The CAW Appointbooks ® listed below used the phrases "Day At A Glance," "Week At A Glance," or "Month At A Glance," with and without hyphens and/or block lettering, on their covers or fly sheets for the first time with the 1989 edition. These usages are not descriptive usages, but trademark usages as they are designed to grab the attention of the consumer since they are featured prominently on the products. *See infra*, at 132–33. These usages also copy the At-A-Glance ® Trademarks word-for-word and are on products which are identical in size and function to the corresponding At-A-Glance ® products listed below:

| CAW Item | Description | At-A-Glance ® Equivalent | Phrase Used by CAW |
|---|---|---|---|
| # 280 (PX 34) | monthly Appointbook ® | # 70–120 (PX 201) | "Month-At-A-Glance" printed on cover and fly sheet |
| # 236 (PX 33) | weekly Appointbook ® | # 70–045 (PX 202) | "Week-At-A-Glance" printed on cover and "WEEK AT A GLANCE" printed on fly sheet |
| # 204 & 206 (PX 40, 32) | daily Appointbook ® | # 70–800 (PX 203) | "Day-At-A-Glance" printed on fly sheet |
| # 206–00 (PX 36) | daily refill | # 70–992 (PX 205) | "Day-At-A-Glance" printed on first page |

| CAW Item | Description | At-A-Glance ® Equivalent | Phrase Used by CAW |
|---|---|---|---|
| # 237–00 (PX 37) | weekly refill | # 70–905 (PX 204) | "WEEK AT A GLANCE" printed on first page |
| # 403 (PX 35) | daily academic Appointbook ® | # 70–807 (PX 206) | "Day–At–A–Glance" printed on fly sheet |
| # 406 (PX 41) | daily academic Appointbook ® | # 70–807 (PX 206) | "Day–At–A–Glance" printed on fly sheet |
| # 282–00 (PX 38) | monthly refill | # 70–921 (PX 207) | "MONTH AT A GLANCE" printed on first page |
| # 285–00 (PX 39) | monthly refill | # 70–921 (PX 207) | "MONTH AT A GLANCE" printed on first page |

From 1924 to 1976, CAW used the words "At A Glance" on the face of only two products, the "2 in 1 Executive's Calendar," and the "Success Weekly Calendar." [3] CAW also used these words in its catalog only with respect to these and four additional products, the "Three-Months-at-a-Glance Wall Calendars," the "Daily Date Calendar" (originally called the "Loose Leaf Calendar"), the Calmanac ® banking calendar, and the Perpetucal ® desk refill.[4] During this period, CAW was not in direct competition with Cullman's predecessors. CAW primarily produced wall and desk calendars; it did not produce wire bound pocket diary and appointment book products that competed directly with the At–A–Glance ® line.

### 1. The 2 in 1 Executive's Calendar

The "2 in 1 Executive's Calendar" was sold by CAW from 1930–32. Although no specimen of this product exists, it appears, based on a picture in a catalog, that the product had the words "A Week at a Glance" printed on it. PX 49. Because the product did not sell particularly well, it was discontinued. T. Norris, 430–33, 463.

### 2. The Success Weekly Calendar

The "Success Weekly Calendar" was first produced in 1934 for the 1935 calendar year. It was often referred to by its number, which was No. 100 (it was changed to No. C580, and now goes by No. 1252–0). It is undisputed that when first produced, the calendar had no cover sheet and the words "At A Glance" did not appear on it. T. Norris 435. CAW claims that in 1935 a cover was designed for the 1936 edition and that the phrase "A Week-at-a-glance" was printed on the cover. T. Norris 436. CAW has not, however, been able to produce a

**3.** During the course of the trial, it was discovered that the Heinz Interest and Discount and Time Teller and Desk Calendar, DX–FG, has had the words "At A Glance" on the cover for over 70 years. Although the calendar was first manufactured in 1916, H.C. Norris 560; DX–FE, CAW only bought the rights to the HEINZ ® calendar in approximately 1984, H.C. Norris 560, and presumably began producing the 1986 edition sometime in 1985. DX–FA. Therefore, we do not consider this historic use by CAW.

We should note that the same copy has been printed on the product basically unchanged since 1939. It states across the top "HEINZ ® INTEREST AND TIME TELLER AND DESK CALENDAR." Beneath it, near the center is the year in large print. Then, beneath the year, also in large print, is the text "TELLS ELAPSED TIME AND MATURITIES AT A GLANCE." *E.g.,*

DX–FG. As stated by its name, the product is a wall and desk calendar that is used by banks and other financial institutions to determine maturity dates and interest on financial instruments. It in no way competes with anything that Cullman makes; in fact, Cullman purchased for resale over three hundred thousand of these calendars from CAW in the last four or five years. H.C. Norris 561.

**4.** A complete recitation of all of CAW's uses of "At A Glance" appears in Tables A, B and C which are exhibits A, B and C to the Joint Pretrial Order. These tables may also be found at PX 1, 43, and 44. These usages are stipulated to by the parties. Undisputed Facts ¶¶ 6–9. These Exhibits will be cited as Tables A, B and C.

specimen of the product with the disputed words on it prior to 1965. In fact, Mr. Norris, Sr., admitted that during a period in the mid to late 1940's to at least 1955, he had discontinued putting the words "A Week-at-a-glance" on the cover sheet.

Cullman asserts that CAW did not use the words "At A Glance" on the weekly calendar prior to 1965. This assertion is supported by the following evidence presented at trial:

a. The only existing specimen of the product prior to the 1965 edition is the 1955 edition, which does not have the words "At A Glance" in any form on any part of it. PX 150.

b. Although they were sure that the product had "At A Glance" on it for every edition from 1936, both Thomas Norris and Coleman Norris testified that they were surprised to learn that the 1955 edition of this product did not have "At A Glance" on it. T. Norris 489–90; H.C. Norris 517. Thomas Norris, the only witness who could proffer testimony on this issue, also testified that he "could be mistaken very easily" about the years "At A Glance" was on or off this product, and that it is difficult for him to be precise about dates. T. Norris 490–91, 457.

c. George P. Clayson, Vice President of Eaton Paper Company, wrote to CAW in August 1965 expressing "amazement" at finding that CAW's Weekly Calendar had "A Week-at-a-glance" on it. PX 162. He later described this discovery as "the sudden surprise appearance of the phrase" on this product. PX 165. He also stated that we [Eaton] have not been aware that you have used the phrase, "A-Week-at-a-glance" since Eaton's acquisition of Nascon Products, Inc. in 1947." Thomas Norris believed that Mr. Clayson was being truthful in these representations. T. Norris 482–84.

d. Mr. Norris sent Mr. Staubach's letter to CAW's counsel Ira Jones with instructions to respond. But Mr. Norris did not tell Mr. Jones or Eaton that CAW had used the words "A Week-at-a-glance" or any variation thereof on the Weekly Calendar prior to 1965. PX 163; T. Norris 486–87. Mr. Jones responded to Mr. Clayson's August 1965 letter by sending copies of the 1938 correspondence between Nascon and CAW—correspondence which made no mention of CAW's alleged use of the words "A Week-at-a-glance" on the Weekly Calendar. PX 158–59, 164. That correspondence specifically referred only to CAW's use of the phrase "Three Months at-a-glance" in price lists. And the one specific document referred to in the 1938 correspondence was a CAW circular from 1928, a time when CAW did not make a weekly calendar product. PX 158; T. Norris 468–72. At trial, Thomas Norris admitted that to his knowledge, "nobody from Columbian Art Works ever told anyone at Eaton that [CAW] had been using a week at a glance prior to 1965." T. Norris 487.

e. Throughout the period from 1935 to 1965, CAW referred to this product in its catalogs as the "Weekly Calendar" or "Success ® Weekly Calendar" and did not call it a "Week At A Glance" calendar. T. Norris 480. CAW began to call this calendar "A Week-at-a-glance" in its catalogs beginning with the 1986 catalog.

During this same period of 1924 through 1976, CAW's catalogs used the words "at a glance"—without the word "week" in front of them—within a sentence in the text next to illustrations of the Weekly Calendar. The catalogs for 1935 through 1940 contain this statement:

"The Success Weekly Calendar is an extremely convenient accessory for the busy person who wishes to see at a glance the appointments and notations of a whole week...."

The catalogs for 1941 through 1976 contain these words within a paragraph:

"Appointments and notations for entire week can be seen at a glance...."

This calendar was not a book product. It had a hole on the top and was designed to

be hung on a wall. Through 1975, the pages were stapled at the top and perforated for removal after use. PX 2–9. Thomas Norris has admitted that this product was not a book product. T. Norris 492.

### 3. The Three Months at-a-Glance Wall Calendar

Since the 1925 edition, CAW has produced a line of wall calendars which it has referred to in its catalogs (since 1936) with some variation of the words "Three Months-at-a-Glance," *e.g.*, "Three Months At–A–Glance Poster Calendars" and "Three-Months-at-a-Glance Wall Calendar For Office or Home." See pages cited in Table B, No. 2. These wall calendars were sold primarily in the advertising specialty line of distribution. T. Norris 495–96. They were not sold in stationery stores. T. Norris 470–71, 495–96.

Beginning in 1925, CAW referred to these advertising wall calendars in price lists with the words "Three Months At A Glance." *E.g.*, PX 45, at 2010. These price lists were given to CAW's sales representatives who used the information in the price lists to sell the advertising wall calendars. T. Norris 496. The price lists had "nothing to do with" stores, and the calendars were not sold in stores. T. Norris 495–96. CAW presented no evidence that the price lists ever reached the purchasers of these products. Based on Thomas Norris' testimony, it appears that these were wholly internal price lists.

In all instances, the words "At A Glance" are preceded by the words *"three months."* (Emphasis added). Furthermore, the words "At A Glance" have never appeared on this product itself. T. Norris 451; H.C. Norris 595. Moreover, the words "At A Glance" have been dropped from the name of the product; the product is now called the "Three–Month Wall Planner." PX 149, at 33.

### 4. The Loose Leaf or Daily Date Wall Calendar

This product is a wall calendar with a single date on each page. It is designed to be seen from a distance. The words "At A Glance" have never appeared on this product. T. Norris 459.

In 1924, CAW filed a copyright application for an advertisement for this product. PX 155. The advertisement (designed to be inserted in envelopes) stated at the top of the first page: "The Date at a Glance at fifteen or at fifty feet." The copyright was not renewed, and CAW never enforced it against anyone. CAW ceased using this envelope stuffer in 1930. T. Norris 456–57.

In its catalogs, CAW originally called this product the "Loose Leaf Calendar" and subsequently called it the "Daily Date Calendar." Prior to 1974, CAW's catalogs used the words "At A Glance"—without the word "day" in front of them—within a sentence in the text next to illustrations of this product. The catalogs for 1935 through 1940 contain this description:

"Here is the date at a glance whether from fifteen or fifty feet …"

The catalogs from 1941 through 1973 contain these words:

"Large daily date easily seen at a glance from fifteen to fifty feet away …"

or

"Large daily date easily seen at a glance from fifty feet away …"

See Table C.

Although CAW continued to market this product after 1973 and to illustrate it in its catalog, CAW dropped the words "At A Glance" with reference to this product. Instead, CAW's 1974 and subsequent catalogs say:

"Large daily date is easy to see—from as far as 50 feet away …"

*E.g.* PX 123, at 2406; PX 124, at 2412; PX 125, at 242.

### 5. No. 85 Perpetucal ® Desk Calendar Refill

For the years 1974 to 1977, CAW used the words "At A Glance" within a sentence in the text next to illustrations of this product. *E.g.*, PX 123, at 2404; Table C at 5 ("Past, current and coming months are shown at a glance on the large daily calendar page.").

6. No. 057–00 Calmanac ® Banking Calendar

For the first time in its 1977 catalog and continuing to the present, CAW used the words "At A Glance" within a sentence in the text next to illustrations of this product. *E.g.*, PX 126, at 2427; PX 190, at 7; Table C at 5–6 ("Allows you to determine at a glance the exact due date of loans at any time within a year's span. . . .").

■ All of the above facts indicate that for over forty years, from 1934 to 1976, CAW and Cullman's predecessors co-existed, in Coleman Norris' words, without any "serious direct conflict in the marketplace." PX 168; H.C. Norris 598–600. Indeed, relations between CAW and Cullman's predecessors had always been relatively good. As Thomas Norris, former president of CAW, testified: "Nascon was a good company, they didn't bother us, and we didn't bother them." T. Norris 440. Two reasons for this lack of conflict were that CAW and Cullman's predecessors primarily made different products and sold their products primarily through different channels of distribution. Nascon, Eaton and Sheaffer Eaton made appointment books and diaries, which they sold through gift shops, art stores, department stores and specialty shops; CAW made desk and wall calendars, which it sold through the commercial stationery and office supply channels of distribution. T. Norris 472–74, 491–93; H.C. Norris 599–600.

It is also clear that during this entire forty-year period through 1976, CAW was keenly aware of the At–A–Glance ® Trademarks and the prominent use by Cullman's predecessors of these trademarks on the At–A–Glance ® line of appointment books and diaries. PX 159; PX 168; T. Norris 445–46; H.C. Norris 597–98, 619–20, 678. The correspondence between Cullman's predecessors and CAW also indicates that aside from the "Weekly Calendar" referred to above, CAW carefully avoided uses of "At A Glance" that would confuse consumers. PX 168. Cullman's predecessors did the same with respect to CAW's trademarks. PX 168–70, 172–75; H.C. Norris 605–07. There was, however, a time when

Eaton produced a pocket calendar called "Calendates." CAW has a registered trademark to the word "Calendater." U.S. Reg. No. 608339. CAW in fear of confusion in the minds of purchasers, requested that Eaton discontinue use of the word "Calendates" on the Eaton product. PX 168. The two companies resolved this dispute in cooperative fashion; Sheaffer Eaton was permitted to continue selling the products it had already gone to press on, but agreed to cease using the name after that time. PX 168–169; PX 172–174.

Thus, it can be said that the companies came to the understanding that each would carefully avoid uses of terms in the other's trademarks that would confuse customers. This understanding was set forth by CAW's current president Coleman Norris in a March 31, 1976 letter to William Staubach, Vice President of Eaton:

> Contributing to the lack of [serious direct conflict in the marketplace between the two respective companies] has been the good faith efforts by the management of both companies to avoid uses of trademark terminology, labeling and advertising which are likely to confuse or deceive purchasers as to the source of our respective products.

PX 168; H.C. Norris 604–08. Mr. Staubach responded in a letter: "We here at Eaton subscribe to the 'good faith efforts' you described in your letter . . . I will do everything I can to continue our cooperative working relationship." PX 169.

It is important, at this point, to reiterate briefly the context of CAW's usage of the words "At A Glance" at the time of this correspondence: (a) it used the words within and as part of a sentence in its catalog with respect to the Weekly Calendar, and it printed "A Week-at-a-glance" on the cover sheet of this product. PX 9, 10 and 125, at 2418; (b) it included the words in its catalog with reference to its "Three Months At-A-Glance Wall Calendar." PX 125, at 2418; and (c) it used the words within a sentence to refer to the No. 85 desk calendar in its 1974 through 1977 catalogs, see pages cited in Table C, No. 4. CAW stopped using the words "At A Glance" as

part of its catalog reference to the Daily Date Wall Calendar in 1973. As discussed above, it continued to sell the product, but it did not use the words "At A Glance" with respect to it. Especially noteworthy is that, at the time of these communications, CAW had never used the words "At A Glance" with respect to any book product nor with respect to any product directly competitive with products manufactured by Eaton and sold as part of Eaton's At–A–Glance ® line. Furthermore, CAW had never used the words on any product continuously produced (other than the Weekly Calendar since 1965) nor as part of the name of any product in a catalog or price list other than the "Three Month-at-a-Glance" wall calendars; and it had not used the words "At–A–Glance" by themselves or the words "Day–At–A–Glance" or "Month–At–A–Glance."

While their relationship remained "cooperative," the competitive positions of CAW and Sheaffer Eaton changed shortly after this 1976 correspondence when CAW moved into the market for appointment books and diaries by introducing an extensive line of over 100 different products under the Appointbook ® trademark—a move designed to compete head to head with Sheaffer Eaton's At–A–Glance ® line. H.C. Norris 627–29, 535–40. Both companies were now in the diary and appointment book field, a field in which the majority of the products in the At–A–Glance ® line are sold. Despite the fact that CAW and Sheaffer Eaton were now direct competitors, with the same customer base, these rivals did not abandon their "good faith efforts ... to avoid uses of [confusing and deceptive] trademark terminology." PX 168. In fact, Coleman Norris admitted that these good faith efforts continued until recently. He testified:

> Q. Did those good faith efforts continue after you wrote this letter of March of '76?

A. I think they continued up to the very recent times.

H.C. Norris 608.

Indeed, the record bears out the fact that CAW scrupulously avoided using "At A Glance" on or with respect to any of its appointment books and diaries from the introduction of its Appointbook ® line in 1977 through its 1988 edition products and its 1989 catalog. There are, however, two exceptions to this general proposition that good faith efforts prevailed during this eleven year period. Cullman suggests, and the Court agrees, that these two exceptions prove this general proposition. First, CAW put "WEEK AT A GLANCE" on the refill portion of one 1987 edition appointment book, but Coleman Norris now admits that he "missed the mark" by putting this phrase on this particular refill because the refill shows two weeks at an opening, not just one. PX 31; H.C. Norris 637. "WEEK AT A GLANCE" did not appear on the 1989 editions of this product. H.C. Norris 637–38; Table A, at 2.

Second, CAW used the phrase "Week-at-a-glance" in its catalogs for the years 1987 through 1989 within a sentence next to the illustration of only one of its Appointbooks ®: the undated No. 364 Any Week Professional Planner. PX 145, at 20; PX 147, at 26; PX 148, at 22. But CAW's catalog shows that Sheaffer Eaton did not make a product comparable to the No. 364. PX 145, at 48–49; PX 147, at 52–53; PX 148 (comparative chart at end); H.C. Norris 645–48. Thus, CAW refrained from using the words "At A Glance" in its catalogs with respect to any appointment books or diaries comparable to any books in Sheaffer Eaton's At–A–Glance ® line. The one usage of "At A Glance" by CAW with respect to an Appointbook ® in its catalog was with respect to a product that did not have an equivalent in Sheaffer Eaton's At–A–Glance ® line.[5]

Although Coleman Norris testified that it was "just plain old common sense" to put

---

5. CAW also increased its usage of "At A Glance" on some desk calendar products from 1978 to 1988 (three desk calendar refills); but, Coleman Norris testified, these "just coincidentally happened to be products that [Sheaffer] Eaton didn't make." H.C. Norris 629–31; Table A, at 2; Table C, at 5–6.

"At A Glance" on appointment books and diaries and that it is "the most logical thing in the world to do," H.C. Norris 609–10, 615–16, 678–80, CAW did not use "At A Glance" on or with respect to these products during the eleven-year period when Sheaffer Eaton and CAW both made appointment books and diaries. H.C. Norris 616–622, 625–27, 659–61, 673–74, 679. Moreover, no other manufacturer of appointment books and diaries put "At A Glance" on the cover of its products, even though Mr. Norris believed it was the self-evident and logical thing to do. H.C. Norris 610–16, 662–64, 674–76.

The eleven years of "good faith efforts" to avoid confusing and deceptive trademark terminology ended when Textron sold its Sheaffer Eaton Division in August 1987 and the At–A–Glance ® business was acquired by Cullman in February 1988. Ten of CAW's 1989 edition Appointbook ® products displayed the At–A–Glance ® Trademarks. PX 32–42. Books whose editions from 1978 to 1988 bore phrases such as "Daily," "Weekly" or "Monthly" now had "Day At A Glance," "Week At A Glance," or "Month At A Glance" printed prominently on them. Hargrove 160–62; H.C. Norris 644–45. This was CAW first use of "Day At A Glance" and "Month At A Glance" ever on CAW products (calendars or books). H.C. Norris 688–89; Table A. And, except for one refill product in one year, PX 31, this was the first use by CAW of the four words "Week At A Glance" without the letter "A" preceding them and without a stylized script. H.C. Norris 689–95; Table A. As for the 1990 CAW catalog, which was printed in the fall of 1988, H.C. Norris 700–01, in place of textual passages referring to Appointbook ® products with terms such as "one day per page" or "one week per two-page spread," which had been used in CAW's 1978 to 1989 catalogs, there are numerous controversial phrases in the 1990 CAW catalog such as "Day at a Glance" and "Week at a Glance." Compare PX 148, at 12–19, 36–37 with PX 149, at 12–19, 36–37; Hargrove 112–14, 163–68; H.C. Norris 644–45, 723–28; Table C, at 6–7. The At–A–Glance ® Trademarks were also used for the first time as the titles for Appointbook ® products. PX 149, at 36–37; Hargrove 167–68; H.C. Norris 726–28; Table B, at 6.

At trial, CAW attempted to show that its dramatic increase in the use of the term "At A Glance" was unrelated and merely coincidental to the sale of the At–A–Glance ® business. H.C. Norris 555, 634–35, 641, 695–96. This explanation, however, is wholly incredible.[6] CAW realized this, and at the end of cross examination, CAW's president Coleman Norris, finally admitted that the sale of Sheaffer Eaton "contributed" to CAW's decision to increase the usage of At A Glance on and with respect to appointment books and diaries. H.C. Norris 748–50. He would not admit, however, that it was the purchase by Cullman Ventures, parent corporation of Keith Clark, a competitor with whom relations had been likened to an "atomic war," H.C. Norris 682, 683–85; PX 170, that triggered the dramatic increase that ensued. Cullman argues that the timing of CAW's introduction of "At A Glance" on the latter's 1989 Appointbook ® products strongly suggests that CAW's actions were directly related to Cullman's acquisition of the At–A–Glance ® line in February of 1988.

This Court certainly believes, as begrudgingly admitted by CAW, that it was Textron's sale of Sheaffer Eaton in August of 1987 to Gefinor that motivated CAW to increase its usage of the term "At A Glance" on its Appointbook ® line. We also believe that the resale of Sheaffer Eaton (and the At–A–Glance ® business)

---

6. Furthermore, even though CAW knew in the mid–1930's that Nascon considered "At–A–Glance" to be their trademark for exclusive use on their products, CAW asserted that it had the right to use Day–At–A–Glance, Week–At–A–Glance, and Month–At–A–Glance on its dated products. CAW claimed that it was advised that the term "'at a glance' was generic and nobody could acquire it, everybody could use it." T. Norris 440–443, H.C. Norris 547, 747. Thus, CAW never believed that it had exclusive rights to use "At A Glance," only some rights to use "At A Glance." The Court finds that, unfortunately for them, CAW was badly advised, and that this assertion that "everybody could use" the mark has no basis in law.

shortly thereafter to Keith Clark, a fierce competitor, could not have been anything but a decisive factor as to the nature and the scope of the significant increase in usage.[7]

While denying that CAW was trying to confuse customers, Coleman Norris reluctantly admitted that he put "At A Glance" on CAW Appointbook ® line to attract new customers. H.C. Norris 729–34. Specifically, he hoped that this change in the product would result in increased sales. H.C. Norris 732. Because CAW's Appointbook ® line is rarely sold in the same retail store as the At–A–Glance ® line, it is a fact that there will be few, if any, side-by-side comparisons by customers. Precisely because the products are not sold together, however, it is certain that customers would be confused by the term "At A Glance" on a CAW Appointbook ®. See *infra* at 129–30. By placing the term "At A Glance" on the cover or first page of its products, CAW hoped to attract a customer who was going to the store to purchase an "At A Glance." H.C. Norris 731. Because the products of the two companies are otherwise entirely similar in format and style, and with the addition of the words "At A Glance" on the cover, a customer is likely to assume he purchased an At–A–Glance ® product when he in fact received a CAW product. See *infra* at Part II, Section B, subsections 1(b), (c) and (h).

Accordingly, the Court arrives at the inescapable conclusion that CAW was trying to improve their competitive position by trading on the name of the admitted industry leader, At–A–Glance ®, and using it on their products to attract its customers. In fact, the record indicates that, in the short term, CAW's strategy was successful. Sales of CAW's 1989 Appointbook ® products with "At A Glance" increased 40.2%

compared to less than 23% for the whole Appointbook ® line. PX 186; H.C. Norris 740. For all the foregoing reasons, the Court finds that the CAW's use of the words "At A Glance" on its products was not in good faith pursuant to the implicit agreement of 1976 and was an intentional infringement of the At–A–Glance ® trademarks.

## II. LEGAL ANALYSIS

### A. *The Right to the Trademarks*

The threshold question in this action is who, CAW or Cullman through its predecessors, is the first user of the words "At A Glance" in a trademark sense. We find that Cullman has the rights of the first user.

As conceded by CAW, Pretrial Order Part 5, ¶ 5; Part 7, ¶ 13, the At–A–Glance ® Trademarks are "incontestable" under Section 15 of the Lanham Act, 15 U.S.C. § 1065. By virtue of Section 33(b) of this statute, the registration certificate of an incontestable trademark is *"conclusive evidence of the registrant's exclusive right* to use the registered mark," subject only to limited defenses set forth in the statute, 15 U.S.C. § 1115(b) (emphasis added); *see Wrist–Rocket Mfg. v. Saunders Archery Co.*, 578 F.2d 727, 730 (8th Cir.1978), and those incorporated by reference such as Section 15. *See* 2 J.T. McCarthy, *Trademarks and Unfair Competition,* § 32:44 at 758 (2d ed. 1984).

Because its trademarks are incontestable, Cullman is presumed, as stated above, to have the exclusive right to use them. However, before we approach the question of whether Cullman proved its entitlement to injunctive relief, it is necessary at this juncture to consider one of the three defenses[8] asserted by CAW to this action; that CAW is the prior user.

---

7. Indeed, CAW admitted that two of the ten "infringing" products were produced after the announcement by Cullman of its acquisition. H.C. Norris 717. They state that the other eight products were produced earlier, however, their witness, H.C. Norris had no personal knowledge of production dates and could not so testify. In fact, an inference may be drawn from the inconsistent manner in which the term "At-A-

Glance" was printed on the product, sometimes with initial capitals and hyphens, sometimes in block letters and no hyphens, H.C. Norris 721, that the words were hastily added to the line.

8. The three defenses are: (1) that it is the prior user under 15 U.S.C. § 1065; (2) that the equitable defenses of laches, waiver and estoppel bar liability; and (3) that its uses are fair uses

■ CAW states several times in its Brief that Cullman has not established "the necessary priority of trademark rights to entitle it to injunctive relief." Def.Br. at 43, 23, 25. CAW suggests in its Post–Trial Proposed Conclusions of Law, ¶¶ 3–7, 53–64, that Cullman must prove priority as part of its affirmative case and that CAW has no burden of proving prior use as an affirmative defense. These statements and suggestions misstate the law. The cases cited by CAW stand for the legal truism that priority of use is determinative of trademark rights. Def. Br. 41–43. None deals with the situation here in which a prior use is alleged to defend against a claim of infringement of *incontestable* registered trademarks. Under these circumstances, the statute makes clear that the presumption is that the owner of the trademark has the exclusive right to use the trademarks subject only to the specified defenses on which the defendant has the burden of proof. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 14 (2d Cir.1976).

■ Furthermore, if proved, a Section 33 defense does "no more than destroy the conclusive evidentiary status of the registration." 2 J.T. McCarthy, *Trademarks and Unfair Competition*, § 32:44, at 762–63. Thus, even if CAW met its burden of proving any of these defenses, such proof would not constitute an absolute defense to Cullman's claim of infringement. These defenses would merely reduce the evidentiary status of the At–A–Glance ® registrations from "conclusive proof" to "prima facie proof" of Cullman's exclusive right to use the At–A–Glance ® Trademarks. *See Park 'N Fly, Inc. v. Dollar Park and Fly,*

*Inc.*, 469 U.S. 189, 199 n. 6, 105 S.Ct. 658, 664 n. 6, 83 L.Ed.2d 582 (1985); *Quill Corp. v. LeBlanc*, 654 F.Supp. 380, 384–85 (D.N.H.1987). CAW would still have the burden of rebutting Cullman's right to exclusive use of these trademarks. *See, e.g., Aluminum Fabricating Co. v. Season–All Window Corp.*, 259 F.2d 314, 316 (2d Cir. 1958); *see also 20th Century Wear, Inc. v. Sanmark–Stardust, Inc.*, 747 F.2d 81, 88–89 n. 8 (2d Cir.1984) (defendant has the burden of rebutting the presumption of plaintiff's right to exclusive use of the mark by a preponderance of the evidence, *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1755, 84 L.Ed.2d 818 (1985).

As discussed below, we hold that CAW has failed to sustain its heavy burden of proof with respect to the prior use defense.

### 1. CAW Has Not Established Prior Use Under 15 U.S.C. § 1065

CAW attempts to defend its recent and widespread infringement of the At–A–Glance ® Trademarks on and with respect to appointment books and diaries by pointing to its minimal, sporadic historic use of the words "At A Glance" with respect to a few desk and wall calendars. CAW relies on this historic usage in asserting the "prior use" defense of 15 U.S.C. § 1065 as a means of contesting Cullman's incontestable At–A–Glance ® registrations.

Section 15 of the Lanham Act, 15 U.S.C. § 1065, would provide a limited defense [9] to CAW's infringement of the incontestable At–A–Glance ® Trademarks only if CAW established that the At–A–Glance ® Trademarks "infringe[ ] a valid right acquired [by CAW] under the law of any State or

under 15 U.S.C. § 1115(b)(4). CAW raised as an "affirmative defense" in its Answer a claim that the At–A–Glance ® Trademarks "have become the common descriptive name of articles sold by the trade" pursuant to Section 14(c) of the Lanham Act, 15 U.S.C. § 1064(c). Defendant's Answer ¶ 68. It also listed this claim as a legal issue in the Pre-trial Order. We are informed, however, that CAW failed to seek any discovery on this issue and we note that it did not offer any evidence at trial to meet its heavy burden of proving this claim. We therefore assume that this claim has been abandoned.

Of course, defenses are usually addressed after plaintiff makes its prima facie case, however, we need to address the prior use defense now as it relates to the "ownership" of the marks.

9. Because of the words "to the extent … to which" in the second clause of the first sentence of section 15, not reproduced in the text above, this defense has been interpreted as a limited defense: limited in geographic scope and limited in time frame. *See* 2 J.T. McCarthy, *Trademarks & Unfair Competition*, § 26:19 at 332–334.

Territory by [CAW's] use of ['At A Glance' as] a mark or trade name continuing from a date prior to the date of registration under this Act of such registered mark." 15 U.S.C. § 1065.

■ To establish the prior use defense, CAW must show: (1) that it acquired trademark rights under state law prior to the date of the At–A–Glance ® registrations; (2) that its use of "At A Glance" as a trademark has continued since a date prior to the At–A–Glance ® registrations; and (3) that its prior use is on products with respect to which infringement has been shown—appointment books and diaries. *See Casual Corner Assoc., Inc. v. Casual Stores of Nevada, Inc.,* 493 F.2d 709, 712 (9th Cir.1974); *Markel v. Scovill Mfg. Co.,* 471 F.Supp. 1244, 1249 (W.D.N.Y.), *aff'd,* 610 F.2d 807 (2d Cir.1979). If CAW carries this burden, then the At–A–Glance ® registrations will be contestable to the limited extent of allowing CAW to continue its prior use. *See 815 Tonawanda St. Corp. v. Fay's Drug Co.,* 842 F.2d 643, 646 (2d Cir.1988); *Wrist–Rocket Mfg. v. Saunders Archery Co.,* 578 F.2d. 727, 731 (8th Cir. 1978).

■ CAW has not met and cannot meet its burden of proof on these issues. Significantly, much of CAW's case focuses on arguments and testimony which are plainly inconsistent with the proof essential to establish the prior use defense. An example of such an inconsistency that will be elaborated on below is that CAW has continually maintained that its use of "At A Glance" is descriptive use, not trademark use, and that everyone has the "right" to use "At A Glance." T. Norris 489; H.C. Norris 547, 783.

### a. *No Prior Trademark Rights*

To sustain its prior use defense, CAW must first prove that it acquired trademark rights under state law prior to Cullman's predecessors' first registrations of the At–A–Glance ® Trademarks in 1936. *See Marcon, Ltd. v. Helena Rubenstein, Inc.,* 225 U.S.P.Q. 895, 896 (4th Cir.), *cert. denied,* 474 U.S. 825, 106 S.Ct. 82, 88 L.Ed.2d 67 (1985); *Casual Corner Assoc., supra,* 493

F.2d at 712. The record is wholly devoid of any evidence on this issue, and CAW has never indicated under which state's law it allegedly acquired trademark rights and the geographic extent of those alleged rights.

■ To have established common law trademark rights under state law in "At A Glance" prior to 1936, CAW must have used "At A Glance" to identify the origin of its products. *See, e.g., Blue Bell, Inc. v. Farah Mfg. Co.,* 508 F.2d 1260, 1265 (5th Cir.1975); *Feathercombs, Inc. v. Solo Prods. Corp.,* 306 F.2d 251, 255 (2d Cir.), *cert. denied,* 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962). Moreover, common law trademark rights would have accrued only by the affixation of the trademark to the products whose origin it identified. *See Blue Bell, Inc., supra,* 508 F.2d at 1267; *Western Stove Co. v. Geo D. Roper Corp.,* 82 F.Supp. 206, 211 n. 1, 213–14 (S.D.Cal.1949). Mere advertisement of a product by use of a mark would not constitute common law trademark use. *See Wrist–Rocket Mfg. Co., supra,* 578 F.2d at 732; *Sunbeam Corp. v. Merit Enterprises, Inc.,* 451 F.Supp. 571, 574 (S.D.N.Y.1978). Common law trademark rights develop when goods bearing the mark are placed in the market and followed by continuous commercial utilization. *Blue Bell, Inc., supra,* 508 F.2d at 1265, 1267.

CAW relies on cases holding that "prior use analogous to trademark use," in other words, prior use in advertising or catalogs, gives a party standing to oppose a registration in an interference proceeding. *See* Def.Br. at 50–51. Whether or not CAW would have had standing to challenge the At–A–Glance ® registrations at some point in the 1930's or 1940's because of its advertising, however, is not relevant to the issue here. Furthermore, even if these cases were controlling, they are not inconsistent with *Blue Bell, supra,* and *Feathercombs, supra* in that these cases stand for the proposition, *inter alia,* that this analogous use must be open and notorious and that it must "demonstrate an intention to appropriate the particular word or symbol as an indication of origin." *E.g., Dynamet Tech-*

*nology, Inc. v. Dynamet Inc.*, 197 U.S.P.Q. 702, 705–06 (T.T.A.B.1977) *aff'd*, 593 F.2d 1007, 201 U.S.P.Q. 129 (1979). As discussed more fully below, CAW claims that it used the words "At A Glance" descriptively, and this Court finds that its use in the early to mid 1930's, late 1920's and with the exception of the "2 in 1 Executive Calendar" was, in fact, descriptive use. During this period, CAW's use of the term "At A Glance" in no way purported to indicate origin; instead, the words CAW used to show origin were "COLART," "TEAR KLEEN," "COLUMBIAN," and "SUCCESS." PX 45–60. Thus, CAW has not proven that it acquired common law trademark rights.

Further supporting this conclusion is the fact that CAW, on several occasions, expressly disclaimed *any* trademark rights in the phrase "At A Glance." As Thomas Norris testified:

> Prior to this lawsuit, I felt that the 'At A Glance,' no trademark could cover it, [sic] everybody owned it, and we paid no attention to it. We made no effort to put it on a product or anything else, it just simply belonged in the public domain.

T. Norris 489; T. Norris 475. Coleman Norris echoed his father in testifying that he believed CAW had no rights in "At A Glance" superior to anyone else:

> Q. And at the time [of the 1981 license negotiations] you didn't believe you had any exclusive right to any at a glance phrase. Is that true?

**10.** In the early 1980's, Sheaffer Eaton initiated negotiations to acquire from CAW any rights the latter may have had in the term "At–A–Glance" and to license back to CAW the right to use the term in a restricted manner. CAW asserts that this fact indicates that Sheaffer Eaton believed that CAW had such rights. We conclude otherwise. The testimony is clear that the reason Sheaffer Eaton proposed such an agreement was to formalize the relationship already existing between the parties—that CAW was a tolerated user of Sheaffer Eaton's marks, Frantz 346–56; PX 306, vol. 5 at 1745–46—and to maintain the status quo. Sheaffer Eaton was willing only to allow CAW to use the term on the few, non-competing desk and wall calendars it had produced and marketed over the years with the words "At A Glance," Frantz 347; it was not willing to allow CAW to expand its usage of "At A Glance" beyond its limited historic usage to usage of greater concern to Sheaffer Eaton. PX

> A. That's right, I did not then, I do not now.

H.C. Norris 743; H.C. Norris 543–44.[10]

He also commented:

> I didn't think we had any rights to 'at a glance,' I thought everybody had rights to 'at a glance,' I thought everybody had rights to 'at a glance.'

H.C. Norris 543. Coleman Norris also testified that the phrases "At A Glance," "Day At A Glance" and "Week At A Glance" did not refer to his company's products or any other company's products. H.C. Norris 600–01.

CAW's clear position is and has always been that everyone has the right to use "At A Glance" and, more importantly, that no one—including CAW—has or ever had any trademark rights in "At A Glance." However, by now asserting the prior use defense, CAW must necessarily claim a proprietary right in "At A Glance." *No Nonsense Fashions, Inc. v. Consolidated Foods Corp.*, 226 U.S.P.Q. 502, 507 (T.T.A.B.1985). The inconsistency of CAW's positions on its rights in "At A Glance" is obvious, and "detracts from the credibility" of its defense. *Id.*

Even if one ignores the inconsistency in CAW's position, the evidence in this case shows that at the time of the first At–A–Glance ® registrations in 1936, no CAW product had the words "At a Glance" affixed to it.[11]

306, vol. 5 at 1745–46. Ultimately, no license was issued.

Coleman Norris decided to talk to Sheaffer Eaton about a license, even though he believed that CAW had neither any exclusive nor simply any special rights to the term. He testified that "I was quite amused, and I said, 'Sure, make me an offer' to find out what in heaven's name they thought we had a right to or what he was getting at." H.C. Norris 543. He further stated that "since [they] thought we had the right, I sort of figured I would go fishing in [their] pond." H.C. Norris 545.

This failed licensing arrangement, then, does not support CAW's argument.

**11.** While CAW maintains, solely through the testimony of Thomas Norris, that its No. 100 Weekly Calendar had "A Week at-a-glance" on its cover for the 1936 edition, the weight of the

Prior to 1936 CAW had affixed "At A Glance" for two years to one product discontinued in 1932, T. Norris 432–33; Table A, at 4, and sporadically used the words in some price lists, catalogs and advertising. *See supra* at 11–18. CAW has thus failed to meet the common law affixation requirement. Moreover, this use of "At A Glance" was too casual and uneven to rise to the level of trademark rights. As the Second Circuit stated in *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1274 (2d Cir.1974):

> Trademark rights are not created by sporadic, casual, and nominal shipments of goods bearing a mark. There must be a trade in the goods sold under the mark or at least an active and public attempt to establish such a trade.

*See also Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531, 534 (2d Cir.1964) (sale of a few hundred cases of Dom Perignon held insufficient to reserve unregistered marks for all time against others); *D.M. & Antique Import Corp. v. Royal Saxe Corp.*, 311 F.Supp. 1261, 1270 (S.D.N.Y.1969) (transitory and minimal use by the defendant held to be insufficient use to give defendant priority over the plaintiff's long, continued and notorious use).

Besides failing to meet the affixation requirement, CAW has offered no proof that before 1936 it used "At A Glance" in any way to distinguish its products in consumers' minds from those of its competitors as required to establish the prior use defense. *See Speed Prods. Co. v. Tinnerman Prods., Inc.*, 179 F.2d 778, 781 (2d Cir. 1949); *Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F.Supp. 866, 875 (E.D.N.Y. 1978). Almost all of the pre-1936 documents on which CAW relies are price lists for advertising wall calendars which were distributed to CAW's own sales representatives. PX 45–48, 50–54, 56–57; T. Norris 495–96; see *supra* at 107. CAW introduced no evidence that these price lists ever reached any consumers and thus CAW

cannot rely on them for the prior use defense. *See Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1265 (5th Cir.1975) (trademark use not found where sales of product bearing mark not made to public). *See also Dynamet Technology, Inc. v. Dynamet Inc.*, 197 U.S.P.Q. 702, 705–06 (T.T. A.B.1977) ("Use must be open and notorious public use directed to the segment of the purchasing public for whom the [products] are intended."), *aff'd*, 593 F.2d 1007, 201 U.S.P.Q. 129 (1979).

### b. *Lack of Continuity*

In addition, CAW failed to prove that its alleged common law trademark use was continuous beginning from a date prior to the At–A–Glance ® registrations up to the present; a decisive requirement of the prior use defense. *E.g., Wrist–Rocket Mfg. Co. v. Saunders Archery Co.*, 578 F.2d 727, 732 (8th Cir.1978); *Kinark Corp. v. Camelot, Inc.*, 548 F.Supp. 429, 433 (D.N.J. 1982). For purposes of the prior use defense, "continuing" is not the same as lack of abandonment. *Casual Corner Assocs. Inc. v. Casual Stores of Nevada, Inc.*, 493 F.2d 709, 712 (9th Cir.1974). (non use of one year negates continuing). Instead, any significant interruption of use defeats the prior use defense. *See* 2 J.T. McCarthy, *Trademarks and Unfair Competition* § 26:19 at 334 (2d ed. 1984). The continuity requirement is consistent with the strong policy underlying the Lanham Act which rewards those who first seek federal registration. *See Weiner King, Inc. v. Wiener King Corp.*, 615 F.2d 512, 523, 204 U.S.P.Q. 820 (1980).

■ As discussed above, prior to 1936 there were only two CAW products that might have had the words "At A Glance" on them. The first is the 2 in 1 Executive's Calendar, which was sold for two years and discontinued in 1932. T. Norris 423–33; Table A, at 4. Obviously, this use has not been continuous. The second product is the No. 100 Weekly Calendar which CAW claims had the words "A Week-at-a-glance" on it in 1935. But even if we accept CAW's

---

evidence suggests the contrary. *See supra,* at 105–06. In any event, as discussed *infra,* at 115–16, it is clear by CAW that this alleged

usage on the No. 100 Weekly calendar has not been continuous in the sense meant under the statute.

contention that its use of "At A Glance" on this product began in 1935 for the 1936 edition, and even if we ignore the fact that if this usage began in 1935, Nascon claimed in its registration that it had prior common law trademark rights dating to 1934, it was conceded by Thomas Norris that "A Week-at-a-glance" was not on this product from the late–1940's to 1955. PX 150; T. Norris 437–38, 461–62. This admitted non-use negates the continuity requirement of the prior use defense. Even one year of non-use eliminates this defense. As the court held in *Casual Corner Assocs., Inc., supra*, 493 F.2d at 712:

> Section 1065 places upon a person claiming a prior state right the burden of showing that his has been a continuing use. To equate continuing with a failure to abandon would shift the burden from the state-right claimant to the owner of a valid and incontestable trademark. Such a result would be inconsistent with the statute and with the protection afforded by the trademark laws. *The Hack Group's failure to use the mark for the one-year period prevents it from claiming that it falls within the exception of section 1065 requiring a continuing use.* (emphasis added).

The 1955 edition of the No. 100 Weekly Calendar (the only pre–1965 edition produced by CAW in this litigation) does not have "At A Glance" on it. PX 150. Just this one year of non-usage would thus be sufficient to negate CAW's prior use defense. We also note that the three year period of non-use from 1932–1935 (again accepting CAW's contention of use) prevents CAW from claiming continuity of use by "tacking" the use of the 2 in 1 Executive's Calendar to that of the No. 100 Weekly Calendar.

#### c. *Wall Calendars vs. Appointment Books or Diaries*

■ Even assuming CAW had been able to establish prior use of the term "At A Glance," this prior use was only in connection with desk and wall calendars and not with respect to appointment books and diaries, the usage challenged here. The prior use defense permits a defendant to contin-

ue to use another party's incontestable registered trademark only with respect to the products on which the prior use was proved. *See, e.g., Dunfey Hotels Corp. v. Meridien Hotels Inv. Group Inc.*, 504 F.Supp. 371, 381–82 (S.D.N.Y.1980). Prior to 1986, CAW never used the words "At A Glance" in any way on or with respect to its appointment books and diaries. It did not even introduce its line of appointment books and diaries until the 1978 edition of its products. Nascon was clearly the first company to use At–A–Glance ® Trademarks on these products. Thus, CAW's use of At–A–Glance ® with respect to other products cannot be a defense to its infringement of the At–A–Glance ® Trademarks on appointment books and diaries because it was not prior use. *See Willson v. Graphol Prods. Co.*, 188 F.2d 498, 503, 38 C.C.P.A. 1030 (1951) (priority rejected where plaintiff was not first to apply mark to nursing bottles although it was first to use it for prescription bottles).

The importance of distinguishing between products for purposes of the prior use defense was discussed in *Physicians Formula Cosmetics, Inc. v. West Cabot Cosmetics, Inc.*, 660 F.Supp. 1222 (E.D.N. Y.1987), *rev'd on other grounds*, 857 F.2d 80 (2d Cir.1988). There the defendant argued that its prior use of the " 'Physicians & Surgeons' mark on hard-bar soap products entitle[d] it to extend application of the mark to other related skin care products." *Id.* at 1224. After reviewing numerous cases on the subject, the district court concluded that the defendant's rights were limited to the products of its prior use (hard-bar soap products) and could not be expanded to cosmetics and other skin care products. *Id.* at 1225–26. On appeal, the Second Circuit agreed and stated:

> Hard-bar soaps were the only product marketed [by defendant] under the PHYSICIANS & SURGEONS mark from 1888 until 1981, when it was first applied to skin creams and lotions. At that time, [defendant's] predecessors had known of the use of the PHYSICIANS FORMULA mark [by plaintiff] on creams and lotions for at least sixteen years but had made

no effort to assert their rights against [plaintiff]. Meanwhile, [plaintiff] had gone to considerable expense to promote its mark and did not learn of the use of the PHYSICIANS & SURGEONS mark [by defendant] on creams and lotions until December 1985. It then acted promptly to challenge what it considered an infringing use. The equities therefore completely favor [plaintiff's] right to the exclusive use of its mark on those products.

*Physicians Formula Cosmetics, Inc. v. West Cabot Cosmetics, Inc.*, 857 F.2d 80, 82–83 n. 1 (2d Cir.1988).

Consequently, CAW's limited historic usage of "At A Glance" with respect to a few desk and wall calendars cannot justify its recent expansion to appointment books and diaries. *See Speed Prods. Co. v. Tinnerman Prods., Inc.* 179 F.2d 778, 781–82 (2d Cir.1949) (Court distinguished between stapling machines and fastening tools on the one hand, and the staples, clips and fasteners themselves on the other hand); *Physicians Formula, supra,* 660 F.Supp. at 1225–26 (collecting and analyzing cases); *Dunfey Hotels Corp. v. Meridien Hotels Inv. Group, Inc.,* 504 F.Supp. 371, 381–82 (S.D.N.Y.1980) (prior use in connection with apartment services is not a defense to use in connection with hotel services). Moreover, the prior use defense, even if established, would permit CAW to use "At A Glance" only in the geographic area of its prior use, *i.e.,* only in the state(s) in which CAW allegedly established prior rights. *E.g., Armand's Subway, Inc. v. Doctor's Assocs., Inc.,* 604 F.2d 849, 851 (4th Cir. 1979); *Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.,* 477 F.2d 150, 157 (6th Cir.1973). *See also supra* footnote 9 at 112. CAW has offered no proof of the territorial extent of its alleged prior rights in "At A Glance." Since CAW did "very little business" and was a "very small company" in the 1930's, T. Norris 427, it is fair to assume that they did not sell products all over the country. CAW's failure to prove the territorial extent of its claimed rights is thus fatal to its defense.

Finally, in situations where the question of first user is close, "the court is required to do more than merely determine which party first asserted rights to the mark 'because the concept of priority in the law is applied "not in the calendar sense" but on the basis of the "equities involved." ' " *Scholastic Inc. v. MacMillan, Inc.,* 650 F.Supp. 866, 873 (S.D.N.Y.1987) (quoting *Manhattan Industries, Inc. v. Sweater Bee by Banff Ltd.,* 627 F.2d 628, 630 (2d Cir.1980) (in turn quoting, *Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F.2d 531, 534 (2d Cir.1964))). *See also* 3 Callmann, *Unfair Competition, Trademarks and Monopolies,* § 76.3(a) at 302 (3d ed.) ("Although adherence to the principle of priority has the advantage of temporal consistency, if it is applied as the dispositive test to resolve a trademark conflict, it might often result in injustice").

Here, given that Cullman and its predecessors have spent millions of dollars over many years to develop At–A–Glance ® as the leading brand in the market for appointment books and diaries, and given that Cullman paid approximately $45 million to acquire the trademarks, goodwill and customer following of the At–A–Glance ® business, it would not be equitable to allow CAW, to reap the rewards of this substantial investment of time, effort and money by using the phrase "At A Glance" on its line of directly competitive appointment books.

2. CAW Has Failed to Prove Prior Use Under 15 U.S.C. § 1115(b)(5)

There is a second prior use defense in the Lanham Act, Section 33(b)(5), 15 U.S.C. § 1115(b)(5). Although CAW did not plead a defense under this section in its Answer or raise it in the Pre–Trial Order, CAW invoked this provision in one sentence of its memorandum of law. Def.Br. at 49.

Section 33(b)(5) of the Lanham Act, 15, U.S.C. § 1115(b)(5), provides that the registration of an incontestable trademark is conclusive proof of the registrant's exclusive right to use the mark except

that the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's

prior use and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this chapter or publication of the registered mark under subsection (c) of section 1062 of this title: Provided, however, that this defense or defect shall apply only for the area in which such continuous prior use is proved....

Although the prior use defense in this section of the Lanham Act is very similar to the prior use defense in Section 15, 15 U.S.C. § 1065, it is narrower. To establish prior use under this section, not only would CAW have to prove the basic elements of its prior use claim under Section 15, *see generally* J.T. McCarthy, *Trademarks and Unfair Competition,* §§ 26:18–19 (2d ed. 1984) [12], but CAW would also have to prove that its use began after Nascon's use and before Nascon's registrations and that it adopted "At A Glance" as a trademark "without knowledge of [Nascon's] prior use." 15 U.S.C. § 1115(b)(5).

CAW cannot sustain a defense under this section for all of the independent reasons enumerated above for which it cannot sustain a prior use defense under Section 15, 15 U.S.C. § 1065. For example, CAW cannot show that it acquired trademark rights under any state's law or that it used a trademark continuously since prior to the At–A–Glance ® registrations. Thus, CAW cannot show that it "continuously used" a "mark" from a date prior to Nascon's 1936 registrations, as is required to make out a prior use defense under Section 33(b)(5). Additionally, CAW cannot satisfy the requirement of Section 33(b)(5) that it adopted a mark "without knowledge of the registrant's prior use." Nascon claimed that it began using Week–At–A–Glance ® in early January 1934. PX 292. CAW, however, claims that it began using the

term "At A Glance" *prior to* Nascon, not after Nascon, as required in order to be able to use the defense provided in this section. Accordingly, CAW is prevented from using this defense. Even putting aside CAW's claims that it used the term first and assuming that CAW began using the term after Nascon, CAW cannot show that it adopted the mark "without knowledge" of Nascon's mark as Thomas Norris testified that CAW knew of Nascon's use of the At–A–Glance ® Trademarks at the time or shortly after Nascon began this use. T. Norris 445–46.

Finally, CAW cannot sustain the prior use defense under Section 33(b)(5) because it failed to prove any geographic area in which it claims prior use. This requirement, which is necessary to prove prior use under Section 15, see *supra* at 112 n. 9, 117, is expressly set forth in Section 33(b)(5). By its terms, the defense applies "only for the area in which such continuous prior use is proved." Accordingly, as CAW cannot prove that it is the prior user either under Section 15 or Section 33,[13] we conclude that CAW has not met its burden of rebutting the incontestable registrations. Thus, Cullman has the exclusive right to use the registered marks.

## B. *Liability of CAW for Trademark Infringement*

Having established that Cullman has the exclusive right to use the At–A–Glance ® Trademark, the next issue for resolution is CAW's liability for the use of the words "At A Glance" on or with respect to its products.

The liability inquiry is directed at two separate types of uses of "At A Glance" by CAW. The first, and most important, is CAW's usage of "At A Glance" on its 1989 Appointbook ® products and with respect to

---

**12.** The requirement that CAW must have acquired trademark rights to establish prior use is the same under both sections 33(b)(5) and 15, 15 U.S.C. §§ 1115(b)(5), 1065. *See Wrist–Rocket Mfg. Co. v. Saunders Archery Co.,* 578 F.2d 727, 730–31 (8th Cir.1978); *Casual Corner Assoc., Inc. v. Casual Stores of Nevada, Inc.,* 493 F.2d 709, 714 (9th Cir.1974); *Old Dutch Foods, Inc. v.*

*Dan Dee Pretzel & Potato Chip Co.,* 477 F.2d 150, 154–55 (6th Cir.1973).

**13.** CAW's citation of Section 49 of the Lanham Act, which preserves trademark rights acquired prior to July 5, 1947, the effective date of the Act, is thus unavailing as we have determined that CAW had no trademark rights in the words "At A Glance" to preserve.

to those products in its 1990 catalog. As the record indicates, this conduct is a recent development, which followed Cullman's purchase of the At–A–Glance ® business. More important from Cullman's perspective, is the fact that it is trademark usage on and with respect to products directly competitive with the At–A–Glance ® line that is likely to cause consumer confusion.

The second inquiry is CAW's continuation of its historic usage of "At A Glance" —a very limited usage of "At A Glance" on and with respect to a few desk and wall calendars not directly competitive with the At–A–Glance ® line. Although this conduct extends back over many years (with respect to two products the No. 100 Weekly Calendar and the Three–Month Wall Planner), Cullman asserts that this usage of "At A Glance" is now more likely to cause consumer confusion because of CAW's recent drastic expansion of its use of "At A Glance" with respect to appointment books and diaries. Accordingly, Cullman seeks an injunction (1) to stop CAW's infringement of the At–A–Glance ® Trademarks on and with respect to CAW's Appointbook ® line and (2) to stop CAW's usage of the At–A–Glance ® Trademarks on and with respect to related products such as desk and wall calendars.

1. CAW Infringed The Incontestable At-A–Glance ® Trademarks On And With Respect To Appointment Books And Diaries

CAW has infringed Cullman's At-A–Glance ® Trademarks registered under the Lanham Act. Section 32(1) of the Lanham Act provides, in pertinent part:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptables or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

shall be liable in a civil action by the registrant for the remedies hereinafter provided. . . .

15 U.S.C. § 1114(1).

In order to determine whether a trademark is worthy of protection, we must look at what type of mark is in issue. The four categories that measure the degree of protection a mark is entitled to are, in ascending order of protection, generic, descriptive, suggestive, and arbitrary or fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976). Generic or "merely" descriptive marks are not entitled to protection. *Id.; see also* 1 J.T. McCarthy, *Trademarks and Unfair Competition,* § 11:9 at 453–54.

Cullman suggests that its At-A–Glance ® Trademarks are suggestive. Unlike a descriptive mark, which describes a product or one of its features, a suggestive mark requires some thought by the consumer to reach a conclusion as to the nature of the goods. *Id.* at 73; *Thompson Medical Co. v. Pfizer Inc.,* 753 F.2d 208, 213 (2d Cir.1985). Since *Park 'N Fly Inc. v. Dollar Park and Fly, Inc.,* it is clear that the incontestable At–A–Glance ® Trademarks in question are not generic. 469 U.S. 189, 204–205, 105 S.Ct. 658, 666–667, 83 L.Ed.2d 582 (1985). Nor are they "merely" descriptive; rather they are at least descriptive with presumed secondary meaning, or suggestive. *Id.; see also* 1 J.T. McCarthy, *Trademarks and Unfair Competition,* § 11:16B.

Certainly, the At–A–Glance ® trademark, without a time designation, is suggestive; it does not "forthwith convey[ ] an immediate idea of the ingredients, qualities or

characteristics of the goods." *Stix Prods., Inc. v. United Merchants & Mfrs. Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968). It merely suggests that something is capable of being viewed quickly. For example, a purchaser unaware of the product hearing the name At–A–Glance ® would find it difficult to identify the product or its contents. *See Independent Nail & Packing Co. v. Stronghold Screw Prods.*, 205 F.2d 921, 295 (7th Cir.), *cert. denied*, 346 U.S. 886, 74 S.Ct. 138, 98 L.Ed. 391 (1953). When At–A–Glance ® is combined with a time designation such as "week," and placed on an appointment book or diary, it suggests that a week of appointments or entries will be quickly viewed when the book is opened. It takes some thought and perception to reach this conclusion. However, as revealed at trial, the trademark Week–At–A–Glance ® does not *describe* the format, contrary to the assertion of CAW.[14] *See* PX 306, Vol. 3, at 815–17, 889–91. As the testimony established, a weekly appointment book can have one week on each page, one week spread over two pages, or a shorter period of time such as five or four days spread over two pages. Hargrove 100–02, 145–47. In the case of a Week–A–Glance ® appointment book, the phrase At–A–Glance ® adds nothing descriptively to the title of the book which is not conveyed by the word "week." PX 508, at 49–50. Coleman Norris testified that he did not describe CAW's 1987 No. 268 Appointbook ®, PX 31, by putting "WEEK AT A GLANCE" on the first page of the refill because, when opened, the book shows two weeks. H.C. Norris 636–37, 691. This testimony reveals precisely why Cullman's Week–At–A–Glance ® trademark is not descriptive.

Similarly, Day–At–A–Glance ® is not descriptive of format because Day–At–A–Glance ® appointment books typically show two days at an opening of these books—not one day. Day–At–A–Glance ® suggests a

quick viewing of daily appointments; it does not describe the format, which could have one day spread over two pages, one day per page, or three days shown at an opening.

A further indication that the At–A–Glance ® Trademarks are suggestive is the fact that descriptive marks (even those with established secondary meaning) could not be registered under the Trademark Act of 1905. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir.1976). *See* 1 J.T. McCarthy, *Trademarks & Unfair Competition*, § 11:18C. Day–At–A–Glance ® and Week–At–A–Glance ® were both registered at the Patent Office in 1936 under the Trademark Act of 1905. PX 290, at 7383; PX 292, at 7452. Thus, the Patent Office determined that these trademarks are not descriptive. This decision by the PTO is entitled to great weight. *American Home Prods. Corp. v. Johnson Chem. Co.*, 589 F.2d 103, 106 (2d Cir.1978); *Union Carbide Corp. v. Ever–Ready Inc.*, 531 F.2d 366, 379 (7th Cir.1976), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976).

Having ascertained that the marks are worthy of protection, we move on to the question of whether Cullman has established a claim for infringement under Section 32(1), 15 U.S.C. § 1114(1), by demonstrating a "likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *accord Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 256 (2d Cir.1987). A showing of likelihood of confusion, rather than actual confusion, is all that is required. *E.g., Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir.1986).[15]

**14.** In fact, CAW, in its catalogs, has used the words "vertical" and "horizontal" to describe format. *E.g.*, PX 123, at 2404.

**15.** Cullman's proof of trademark infringement under Section 32(1) of the Lanham Act, 15

U.S.C. § 1114(1), also establishes a violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125 (Cullman's Second Claim for Relief in its Complaint), which proscribes false designation of origin and false description of goods or services. *E.g., Lois Sportswear, supra*, 799 F.2d at 871.

■ Cullman has presented extensive evidence that consumers will be confused by CAW's use of "At A Glance" on and with respect to its appointment books and diaries. In determining whether CAW's prominent use of the At–A–Glance ® Trademarks on these products presents a likelihood of consumer confusion, the Court will consider the eight well-known factors first pronounced by Judge Friendly in *Polaroid Corp. v. Polaroid Elec. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961):

(1) the strength of plaintiff's mark;

(2) the degree of similarity between the two marks;

(3) the proximity of the products or services;

(4) the likelihood that plaintiff will bridge the gap;

(5) actual confusion;

(6) the defendant's good faith in adopting its mark;

(7) the quality of defendant's products; and

(8) the sophistication of the buyers.

A ninth factor, balancing of the equities between the parties, was added by the Second Circuit in *Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531, 536 (2d Cir.1964). The *Polaroid* factors are not a rigid formula, but rather serve as a useful guide in determining likelihood of confusion.[16] None of these factors is dispositive, and each must be evaluated according to the way in which it bears on the ultimate question of confusion. *See Banff Ltd. v. Federated Department Stores, Inc.*, 841 F.2d 486, 490 (2d Cir.1988).

■ An evaluation of these factors shows that consumers are likely to be confused as to the source of CAW's appointment books and diaries that bear the words "At–A–Glance."

### a. *At–A–Glance ® is a Strong Mark*

The strength of a mark refers to its "tendency to identify the goods sold under the mark as emanating from a particular source." *McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979). This factor is crucial to the likelihood of confusion analysis. *Lois Sportswear, supra*, 799 F.2d at 873. When a mark is strong, it is entitled to broader protection. *See John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973 (11th Cir. 1983).

■ Cullman argues that since the At–A–Glance ® Trademarks are incontestable under the Lanham Act, "they are presumed by law to be strong and distinctive trademarks." Pltf. Mem. at 36. This is a misstatement of the law. The Supreme Court in *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196–97, 105 S.Ct. 658, 662–63, 83 L.Ed.2d 582 (1985) upheld the conclusive presumptions as to the *validity* of an incontestably registered trademark. However, the Court certainly did not mean to prevent an accused infringer from questioning the *strength* of the mark and the scope of its protection. *See* 2 J.T. McCarthy, *Trademarks & Unfair Competition* § 32:44 (Supp.1988 at 170); *see also Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 171 (5th Cir.1986) (Incontestable status does not preclude defendant from arguing mark is weak and not infringed; "Incontestable status does not make a weak mark strong."), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); *Majorica, S.A. v. Majorca Int'l, Ltd.*, 687 F.Supp. 92, 98 (S.D.N.Y.1988) (court concluded that *Park 'N Fly* does not relieve owner of incontestable trademark of the necessity of proving likelihood of confusion and infringement).

There is, however, no need for Cullman to rely on the incontestable status to prove the suggestive marks' strength as there is overwhelming and uncontroverted evidence that the marks which comprise the "At–A–Glance ® Family" are strong; in fact, the At–A–Glance ® brand is the leading brand of appointment books and diaries that consumers, retailers and wholesalers ask for

---

16. Although the *Polaroid* balancing test was initially applied to cases involving non-competing products, it now also applies to competing products. *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 214 (2d Cir.1985).

by name. *See supra*, at 103 and *infra*, at 122–23.

### (i). Recognition of Strength by Competitors

The strength and value of the At–A–Glance ® Trademarks is evidenced by the fact that other companies, already in the business of manufacturing and distributing dated products, were desirous of acquiring the At–A–Glance ® business. Indeed, Cullman purchased the At–A–Glance ® line of appointment books and diaries even though it was already manufacturing a line of appointment books and diaries under its Guilford ® brand name. Cullman's own experience in attempting to build its Guilford ® line in retail stores demonstrates the strength of the At–A–Glance ® brand and why it was so desirable. As Tom Hargrove testified:

> Well, we did virtually everything that we could think of to enhance our position with retailers. We offered advantageous pricing, we discounted our Guilford line of products to encourage retailers to stock it, we ran special promotional offers to try to induce and encourage people to stock the product.

Hargrove 125. But, At–A–Glance ® was too strong:

> It was very difficult for us to sell against the strong brand position that the At–A–Glance line of products had in the retail marketplace.

> . . . . .

> We had numerous occasions where, because of the price concessions that we were making, a retailer would stock our item for a year and then as a result of the retailer experiencing lower sales of our item than he experienced with the At–A–Glance items or because the retailer was not able to service the consumer

demand [sic] who came in and asked for At–A–Glance, in the next year he would go back to the At–A–Glance product line. Hargrove 126–27.[17]

Thus, the strong position in the marketplace and the tremendous customer following and goodwill indicate why Cullman paid the approximately $45 million for the At–A–Glance ® Trademarks, and all that went with the At–A–Glance ® brand name.[18] Hargrove 131.

Cullman is not the only dated product manufacturer that was interested in the At–A–Glance ® line. CAW's Coleman Norris testified that it was on his "wish list." H.C. Norris 750. He concurred that it was the "customer following" of the At–A–Glance ® name that made the business valuable. H.C. Norris 751 (comparing the customer following to that of a Cadillac). He also agreed that the At–A–Glance ® line was "especially strong" in the marketplace and was the "leading line" of appointment books and diaries—at least in the wholesale channel of distribution. H.C. Norris 628, 678, 750–51. He further stated that he would have disposed of the physical assets of the business—as Cullman did—if he had acquired it. H.C. Norris 750. This recognition and appreciation of the worth of the brand by two of the three major competitors of Sheaffer Eaton, Cullman and CAW, demonstrates the strength of the At–A–Glance ® Trademarks.

### (ii). Consumer Recognition of At–A–Glance ®

The testimony of three non-party witnesses at trial who are very familiar with the dated products industry supports the finding that "At A Glance" is [a] trade name that is demanded by the public." Williams 245. The testimony of these third-party witnesses is proof of the strength of the At–A–Glance ® Trade-

---

**17.** This testimony was corroborated by Jim D. Williams, Senior Vice President of M.S. Ginns & Co., a large volume office supply store chain with 42 retail stores. Williams 246. See also *infra* at 123–24.

**18.** Since it has acquired the At–A–Glance ® brand and is now selling both the At–A–Glance ® and the Guilford ® lines of compara-

ble products, Cullman has found that the "[p]ricing and profitability of the At–A–Glance line is higher than on the Guilford line of products." Hargrove 150; *see* Hargrove 150–52. An explanation for the greater profitability and higher price is simply the value of the At–A–Glance ® brand name and trademarks.

marks. *See Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 1170, 1174–75 (2d Cir.1976).

Robert Peterson, Vice President of Merchandising for United Stationers—the largest wholesaler of office products in the country and a customer of both CAW and Cullman—testified that At–A–Glance ® is "the most sought after [brand of] wirebound appointment books." Peterson 49–51, 68, 76–77.

Two witnesses who are officers of large multi-state retail outlets, and who deal with consumer demands on a regular basis, testified that consumers "verbally request ... At–A–Glance product[s]." Flanagan 259; see also Williams 245, 247. Jim D. Williams, Senior Vice President of M.S. Ginns and Company, a large volume office supply chain of 42 retail stores, testified that "the people who want the At–A–Glance, they want the At–A–Glance brand. ... [T]hey are looking for a quality product, and At–A–Glance has been over the years qualified as a quality product better than what was on the market." Williams 241–43, 247.

At–A–Glance ® is such a strong brand name that retailers have difficulty replacing it. As Mr. Williams testified, the one time his company discontinued the At–A–Glance ® line and replaced it with the Guilford ® line of appointment books and diaries:

> We come [sic] to find out that it's impossible to replace the At–A–Glance ® line.... And we had to special order most of our products from the wholesalers that the customers demanded that year.

Williams 246. One further indication of the strength of At–A–Glance ® is that retailers stock At–A–Glance ® even though they can earn a higher profit from another brand of appointment books or diaries, such as Guilford ®. Hargrove 150–51. As Mike Flanagan, Director of Advertising and Promotions of St. Paul Book & Stationery, another large volume retail chain, testified:

> We make a lot more money off Guilford. To begin with, to purchase we make a lot more money off Guilford but bottom line there are Guilford left and there are ... [n]o ... At A Glance left in the store.

Flanagan 265.

### (iii). Direct Competitors Have Refrained From Using At–A–Glance ®

The major manufacturers of appointment books and diaries in the office products channel of distribution until 1988 were Sheaffer Eaton, CAW, Cullman and Southworth. Hargrove 95. From 1976 to 1988 none of these manufacturers, other than Sheaffer Eaton, ever put the words "At A Glance" on the cover of an appointment book or diary. H.C. Norris 610–16, 674–76; Hargrove 95–96, 104–05; Peterson 60–62.[19] As Tom Hargrove testified, "we had never seen At A Glance used on any other manufacturer's products." Hargrove 202. Cullman never used "At A Glance" on or with respect to any of its dated products before it acquired the At–A–Glance ® business.[20] There were several reasons for this restraint:

> First, because it was somebody else's brand name, and we didn't feel like we had any rights to be using it. Secondly,

---

**19.** CAW printed the words "WEEK AT A GLANCE" on the cover page of one 1987 edition refill product. PX 31. Coleman Norris admits that this was a mistake. *E.g.*, H.C. Norris 637. The use of "At A Glance" on this product ended with the 1987 edition. Table A, at 2.

A Southworth monthly appointment book for the years 1986 and 1988 had the words "Year At A Glance" on two interiors pages. DX–RE; DX–RF. The 1989 edition of this book does not use those words. PX 451. Aside from this limited usage, which has ceased, no leading manufacturer ever put the words "At A Glance"

anywhere on an appointment book or diary, except for Sheaffer Eaton. H.C. Norris 676.

**20.** CAW has marked as exhibits several catalogs of calendar companies now owned by Cullman that contain the words "At A Glance" in texts next to illustrations of products. (DX L–AN). These catalogs are for years prior to Cullman's acquisition of Keith Clark. From the time Cullman acquired Keith Clark in 1976 until it acquired the At–A–Glance ® line, Cullman did not use "At A Glance" in any way in its catalogs or on its products. PX 238–87; Hargrove 104–05.

**124**

we had our own brand name that we used to sell these appointment books under. And, finally, we had all manner of alternate ways to refer to the product. We could refer to it as a Week–At–An–Opening or One–Week–Per–Page or One–Week–Per Two–Page Spread. So there were really no reason for us to use At–A–Glance.

Hargrove 105.

During this same time period, the major manufacturers of appointment books and diaries aside from CAW, also refrained from using "At A Glance" in their catalogs. PX 238–87, 401–06. In addition, the four national wholesalers of dated products, United Stationers, Boise Cascade, S.P. Richards and Stationers Distributing Co., H.C. Norris 676–77, use "At A Glance" in their catalogs with respect to appointment books and diaries only "as a branded product, brand name product," referring to the At–A–Glance ® line manufactured by Cullman and its predecessors. Peterson 53–57, 64–67; PX 407–10, 412.[21]

The depositions taken by CAW of six companies in the dated product industry which used the words "At A Glance" at some time with respect to their products are further evidence of third-party restraint in using "At A Glance."

The first deposition taken by CAW was of Baldwin Cooke, a distributor of diaries and appointment books in the advertising specialty field. PX 501, at 5. Roger Tillman, Product Manager of the company, testified that "At A Glance" is a trademark for the product line formerly produced by Eaton and Sheaffer Eaton, and now produced by Cullman. *Id.* at 54. Baldwin Cooke has never used the words "At A Glance" on a product. *Id.* at 53. Mr. Tillman testified that Baldwin Cooke's use of the words "At A Glance" with reference to appointment books and diaries in the mid–1980's was a mistake which has been corrected. *Id.* at 58–61. Since correcting

its mistake, Baldwin Cooke has not used "At A Glance" in any way with respect to its appointment books and diaries (or the format of its appointment books and diaries) because it is somebody else's trademark. *Id.* at 58–64. When CAW's counsel asked why Baldwin Cooke desisted from using the words "At A Glance" in its catalogs, Mr. Tillman explained: "The reason we did it is because it was the trademark of another company." *Id.* at 68.

CAW took the depositions of five other companies that used the words "At A Glance" at some time with respect to their products. (PX 502, 504–08). Two of these companies, House of Doolittle and Visual Organizers, agreed to stop using these words when Cullman requested them to do so after their depositions. Hargrove 156. Two of the remaining three companies, Advertising Unlimited and Kurtz Brothers, are predominantly in the advertising specialty business, as opposed to the business of manufacturing appointment books and diaries. PX 506, at 67–68, 71, 83; DX–KA, at 6, 12. None of the three companies uses the words "At A Glance" on a product. PX 505, at 62; DX–KA, at 7, 25; *see* PX 506, at 85; DX–LA, at 9.

### *(iv). Sheaffer Eaton's Policing of its At–A–Glance ® Trademarks*

 A trademark owner's efforts at policing its trademarks is further proof of the strength of those marks. *E.I. Dupont de Nemours & Co. v. Yoshida Int'l., Inc.,* 393 F.Supp. 502, 512 (E.D.N.Y.1975). Cullman and its predecessors have actively, systematically and successfully protected the At–A–Glance ® Trademarks by policing misuse.

Mr. Thomas Frantz, the manager of the pertinent trademarks from 1963 until Cullman's acquisition of the At–A–Glance ® business, testified as to how he, on Sheaffer Eaton's behalf, arrived at the determi-

---

**21.** The catalogs of these wholesalers are used by their customers with the customers' own covers as the customers' catalogs. For example, Mr. Peterson of United testified that United produces 3,500,000 copies of its catalog and that 4,500 of its customers purchase and use United's catalog as their catalog. Peterson 51–52, 56–57. The catalog of St. Paul Book & Stationery, DX–RA, is the S.P. Richards catalog with St. Paul's cover. PX 412. Thus, the catalogs of these four national wholesalers are the catalogs of many thousand of dealers throughout the country.

nation that the marks were being misused and that such use had to be challenged:

Q. [on direct] What were your criterian [sic] in determining when a particular use should be challenged in your judgment and when it should not be?

A. First and foremost, was whether the words were on the product. If they were on the product, then, of course, we felt that was undesirable, particularly in terms of our appointment book line.

Secondly, was it on the appointment book line itself. That certainly was our most valuable and important line of products in the At–A Glance field.

Next was whether the use was emphasized. If it was spread across the top as a headline, then it was undesirable in our view.

Q. How else could it be emphasized besides as a headline?

A. Oh, if you put it in quote marks, for example, or all capital letters.

Q. Things other than just using the words in lower case within a sentence?

A. Yes, yes.

Q. What about the placement of the words within a sentence in terms of the part of speech they were, adverb vs. adjective?

A. Well, if the words were used to modify the name of a product such as book, calendar, what have you, then this generally have considered [sic] trademark usage.

Q. Could you explain the difference as you saw it between hypothetically using the words this is a Week At–A–Glance appointment book vs. this [ ] book will allow when you open it to see all your appointments at a glance.

Did I posit a good hypothetical there?

A. Yes.

Q. What is the difference between those two, this is a Week–At–A–Glance appointment?

A. That is trademark usage Week–At–A–Glance appointment book is trademark usage, the other is conversational usage to illustrate a feature.

Q. And in making your judgment as to what you would challenge and what you wouldn't challenge, how would you react to those two hypotheticals that I just gave you in general?

A. Generally, if it was the conversational, nonemphasized use, then I would not take the position that it was a trademark infringement.

Frantz 323–24. He also testified that potential infringements were routed to him from the marketing people. *E.g.,* Frantz 361.

Prior to CAW's 1988–89 infringement, only four companies had ever put "At A Glance" on the *cover* or *fly sheet* of an appointment book or diary. Three (American Greeting Corp., George Seelman & Co. and Prentice Hall Inc.) agreed to desist when Sheaffer Eaton demanded they do so. PX 306, Vol. 2, at 677–94; Vol. 3, at 811–29, 879–913; Frantz 293–304. The other, Recycled Paper Products, initially refused. Sheaffer Eaton brought an action against it in 1986, resulting in a consent injunction and damages against the infringer. PX 306, Vol. 2, at 393–582; PX 290, at 7429–31; PX 291, at 7948–50; PX 292, at 7499–7501; PX 293, at 7518–20; PX 295, at 7536–38; Frantz 304–08.

Sheaffer Eaton also successfully opposed four applications to register trademarks using the words "At A Glance" for products which were not "calendar books or memorandum books," nor even dated products:

(a) "Speak at a Glance," a series of language translation charts, PX 306, Vol. 3, at 1009–64; Frantz 309–12;

(b) "California at a Glance," a guide to the state crops, PX 306, Vol. 5, at 1890–937; Frantz 314–15;

(c) "Dataglance," a line of business forms, PX 306, Vol. 5, at 1853–89; Frantz 312–14; and

(d) "Plants at a Glance," a guide to plants, PX 306, Vol. 5, at 1938–2067; Frantz 315–22.

In addition, the testimony at trial of Mr. Frantz, Frantz 277, together with his entire file on the At–A–Glance ® Trademarks, received as PX 306, indicates that Sheaffer Eaton regularly contacted entities they determined to be infringers of these marks.

An index to the exhibit, prepared by counsel for Cullman and authenticated by Mr. Frantz, divided the 89 individual files that comprise the entire exhibit into five categories. Category 1 shows that, after receiving a "cease and desist" letter from Mr. Frantz, 42 entities ceased or said they would cease in the near future their use of the term "At A Glance." The files were not complete as to 14 companies in that they only contained intra-company [Sheaffer Eaton] memos and they did not reveal the infringing companies' responses (Category 3). However, one of these companies in Category 3 is also classified in Category 1 as ceasing its use, PX 306; Vol. 1, at 294–392 and index, and one Category 3 company is also classified in Category 2 as refusing to cease its use, PX 306, Vol. 1, at 212–221 and index. Mr. Frantz testified as to what generally happened in these situations where there was no response (Category 3) in the file to his letter asking the entity to cease and desist using "At A Glance:"

A. ... [S]everal things happened, several instances, and that unfortunately it is not shown in the files. Either the attorney for the other party or the individual who received the letter would telephone and say, "Okay, we're going to drop the mark, but we don't want it on record," so I would just close the file, and there were other cases where I felt that if we after giving the cease and desist letter, that we would simply watch, and this is based on many years of experience, it probably would never be repeated, and if it was repeated, marketing would again call it to me my attention (sic), and then we could take appropriate systems.

Q. So is it a fair inference when there is no response, that you didn't hear further from your marketing people that there was further infringement or probably an abusage?

A. That's right. If we had heard back on those instances, it would have been able in the file here because our marketing people were very vigilant (sic), as you can tell.

Frantz 327.

Category 4 was labelled "Sheaffer Eaton Did Not Pursue." There were 28 entities in this category. The testimony indicated that there were several reasons why Sheaffer Eaton did not pursue a possible infringement by a particular entity. The Court notes the similarity between the reasons enumerated below and those set forth just above. First, Mr. Frantz stated, "[t]o the best of my knowledge, those uses did not occur on the products, they occurred in advertising catalogs or things of that sort that just relate to those products. there may be one or no exceptions...." Frantz 387. Second, an infringement may have been a "one shot advertisement," which in most cases would "never appear again." Frantz 391. Third, the uses were "in an unemphasized, very low-key manner." Frantz 392. Finally, even though something otherwise met the criteria of an "infringement," sometimes an address for the company that manufactured the product could not be located. Frantz 389–90; PX 306, Vol. 3, at 1083. Last, with respect to the index, Category 5 shows that, as mentioned above, there were legal proceedings instituted in the administrative agencies of the United States Patent and Trademark Office and in the Federal District Court in Illinois.

From this index, as well as the underlying documents, it is clear that of all the "infringements" Sheaffer Eaton pursued, 61 in all,[22] the vast majority, or at least 47,[23] were resolved favorably to Sheaffer Eaton with the entities terminating their use of "At A Glance." Accordingly, the evidence shows that Sheaffer Eaton took reasonable steps to maintain its rights in At–A–Glance ®. Although Sheaffer Eaton's record was not perfect, Sheaffer Eaton was not

required to constantly monitor every nook and cranny of the entire nation and

---

**22.** Adding Categories 1, 3 and 5.

**23.** Adding Categories 1 and 5. However, it can be inferred from the portions of the transcript quoted above, that the 12 entities in Category 3 also ceased infringing, thereby bringing the number to 59 of 61.

to fire both barrels of [its] shotgun instantly upon spotting a possible infringer. Lawyers and lawsuits come high and a financial decision must be made in every case as to whether the gain of prosecution is worth the candle.

*Engineered Mechanical Servs., Inc. v. Applied Mechanical Technology, Inc.,* 584 F.Supp. 1149, 1161 (M.D.La.1984); *see also Elizabeth Taylor Cosmetics Co. v. Annick Goutal, S.A.R.L.,* 673 F.Supp. 1238, 1248 (S.D.N.Y.1987) (trademark owner is not required to act against every infringing use); *Playboy Ents. Inc. v. Chuckleberry Publishing Inc.,* 486 F.Supp. 414, 422–23 (S.D. N.Y.1980); *McNeil Laboratories, Inc. v. American Home Prods. Corp.,* 416 F.Supp. 804, 809 (D.N.J.1976) (same). In fact, it is significant that the index and underlying documents demonstrate that Sheaffer Eaton pursued over two-thirds of the potential infringements it was made aware of (DX 306, Index Categories 1, 2, 3 and 5) and, what is most important is that Sheaffer Eaton was successful in preventing the two most damaging uses of "At A Glance" by others: on appointment books or diaries and as registered trademarks.[24]

### *(v). Sales and Advertising*

The At–A–Glance ® line has become the leading brand of appointment books and diaries only through years of investment in advertising and sales promotion. This has resulted in a huge sales volume. During the past ten years, the At–A–Glance ® line had been widely promoted; and it has generated hundreds of millions of dollars in sales. PX 308, 310; Hargrove 152–55. Advertising expenses have averaged over a million dollars a year for the last five years. PX 308, 310; Hargrove 152–55. This evidence of widespread sales and advertising of the At–A–Glance ® Trademarks is further evidence that At–A–

Glance ® is a strong trademark which purchasers have come to associate with only one source: Cullman and its predecessors-in-interest, as owners and manufacturers of the At–A–Glance ® line. *Scarves By Vera, Inc. v. Todo Imports, Ltd.,* 544 F.2d 1167, 1170, 1175 (2d Cir.1976); *Levi Strauss & Co. v. Blue Bell, Inc.,* 632 F.2d 817, 821 (9th Cir.1980).

In sum, then, this factor clearly supports the plaintiff.

### b. *CAW's Mark are Identical to the At–A–Glance ® Trademarks*

The second *Polaroid* factor involves a comparison of the marks and the products at issue to determine whether there is a confusing similarity. In this case, a comparison reveals that the marks and the products are more than confusingly similar—they are virtually identical—and thus consumer confusion is inevitable. *See Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47–48 (2d Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

CAW's 1989 appointment books and diaries that bear "Day At A Glance," "Week At A Glance" and "Month At A Glance" on their covers and fly sheets are identical in size and function—although perhaps not in some aspects of quality—to Cullman's competing products. Furthermore, CAW has copied the exact phrases that Cullman has registered—without the addition or omission of even a single letter. Due to the low price of these items, an ordinary consumer is not likely to thoroughly analyze a CAW book and will inevitably confuse this book with its At–A–Glance ® equivalent. See *infra* at 131.

CAW's reproduction of Cullman's At–A–Glance ® Trademarks will cause consumers to believe either that the CAW products are At–A Glance ® products, that CAW is

**24.** With regard to Sheaffer Eaton's efforts to police the At–A–Glance ® Trademarks, CAW in its post-trial papers refers to several situations, some of which were not included in the Frantz file, PX 306, in which some entity used the term "Year–At–A–Glance" or some variant thereon with the time designation "year" on or with respect to its products. Def. Br. at 18–19. As there was no mention at trial of the term "Year–

At–A–Glance" in connection with the usage challenged here, and indeed the Pre-trial Order only deals with At–A–Glance ®, Day–At–A–Glance ®, Week–At–A–Glance ® and Month–At–A–Glance ®, Undisputed Facts at ¶¶ 3, 5, the Court concludes that the possible infringement situations involving "Year–At–A–Glance" are not germane to the issues at hand.

associated with the At–A–Glance ® products sold by Cullman, or that Cullman has consented to CAW's use of the At–A–Glance ® Trademarks. *Lois Sportswear, U.S.A. Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 872–73 (2d Cir.1986). Robert Peterson of United Stationers testified that he is concerned that CAW's usage of "At A Glance" will cause:

> [c]onfusion on the part of the consumer that when a consumer walks into a retail store and they have an at a glance appointment book, daily, monthly, weekly, and they ask a sales clerk, or they go to pick the product, if the term at a glance, weekly, monthly or daily is on the cover, they may not be getting the same product that they had previously purchased and had used over the years. They will get, if it is the Success dealer, a Success product.

Peterson 72.

Although CAW's SUCCESS ® trademark also appears on the Appointbook ® line on the bottom right hand corner of the products, this trademark is hidden by the display container specially designed for these goods. *E.g.,* PX 149 at 38–43. When the CAW product is on display, all that a consumer sees is the "WEEK AT A GLANCE" etc., designation on the upper portion of the product. Accordingly, it is without doubt that "AT–A–GLANCE" used as it was on CAW's 1989 Appointbook ® line, on the products and in a trademark sense, creates consumer confusion.

■ CAW contends that its usage of "At A Glance" will not cause consumer confusion because it did not use At–A–Glance ®'s "unique logo." CAW's Opening Statement 42. This argument boils down to an assertion that CAW is shielded from liability because it did not reproduce the background designs that appear on the registrations of some of the At–A–Glance ® Trademarks. This contention misinterprets the law. An infringer is not absolved from liability merely because it has not replicated every single aspect of a trademark—including a simple geometric background design. *See Independent Nail & Packing Co. v. Stronghold Screw Prods.,* 205 F.2d 921, 924 (7th Cir.), *cert. denied,* 346 U.S. 886, 74 S.Ct. 138, 98 L.Ed. 391 (1953). The scope of protection of the At–A–Glance ® Trademarks is not limited to an exact replication of the mark as it appears on the registration certificate. *Armstrong Cork Co. v. Armstrong Plastic Covers Co.,* 434 F.Supp. 860, 871 (E.D.Mo.1977); *see Xerox Corp. v. Litton Educ. Publishing, Inc.,* 169 U.S.P.Q. 750, 751 (T.T.A.B.1971). Rather, "[t]he scope of protection of a mark is bounded by the line at which there is a likelihood of confusion of the public caused by another's use of the same or similar mark, not by technicalities." *Squirtco v. Tomy Corp.,* 697 F.2d 1038, 1043 (Fed.Cir.1983). Cullman's rights exist in the words "At A Glance" themselves rather than in any particular form or arrangement thereof. *Ilco Corp. v. Ideal Sec. Hardware Corp.,* 527 F.2d 1221, 1224, 188 U.S.P.Q. 485 (1976); *Humble Oil & Refining Co. v. Sekisui Chem. Co.,* 165 U.S.P.Q. 597, 603–04 (T.T.A.B.1970). The form of the mark can be changed and the benefit of its use in the earlier form retained as long as the "new and old forms create the same, continuing commercial impression." *Ilco,* 527 F.2d at 1224. The style of many of the marks in question was changed from a vertical format to a horizontal format but the PTO deemed this change to have no significant consequences, see *supra* at 103, presumably because the same commercial impression is created.

As Coleman Norris conceded and courts have long recognized, consumers ask for a product by its name, not its logo.[25] H.C. Norris 752. Thus, similarity for purposes of likelihood of confusion means similarity in appearance, *sound* or *meaning. See Armstrong Cork Co., supra,* 434 F.Supp.

**25.** In their post-trial papers, counsel for CAW belatedly objects to the question posed by Cullman's counsel which elicited this concession. No objection was made at trial. H.C. Norris 751–52. Furthermore, the objection, that the question assumed a fact not in evidence, is erroneous as there was testimony at trial that people demand the product by name. Williams 245, 247; Flanagan 259.

at 871. Similarity in any one of these aspects is sufficient. *In re Mack*, 197 U.S. P.Q. 755, 757 (T.T.A.B.1977). The "At A Glance" marks used by CAW and the At–A–Glance ® Trademarks are aurally identical and have the same meaning. They are, therefore, similar for purposes of determining likelihood of confusion. *McDonough Power Equip., Inc. v. Weed Eater, Inc.*, 208 U.S.P.Q. 676, 685 (T.T.A.B.1981); *see also In re Mercedes Slacks, Ltd.*, 213 U.S. P.Q. 397, 399 (T.T.A.B.1982).

■ Furthermore, the primary At–A–Glance ® trademark, which can be found at every opening of every wirebound appointment book or diary, is not displayed in any "logo" form. PX 287, at 7359. When a registration is of a mark typed in capital letters—such as the At–A–Glance ® registration—the registrant is not limited to the mark in any one form. *Philmont Elecs. Inc. v. Long*, 212 U.S.P.Q. 534, 536 (T.T.A. B.1981); *Industrial Valley Bank & Trust Co. v. Bankers Trust of South Carolina, N.A.*, 201 U.S.P.Q. 888, 894 (T.T.A.B.1979).

The so-called "distinctive logo," as CAW characterizes the two designs used in the other At–A–Glance ® trademark registrations, is simply a geometric background design that courts and the Trademark Trial and Appeal Board consider immaterial. *See No Nonsense Fashings, Inc. v. Consolidated Foods Corp.*, 226 U.S.P.Q. 502, 508 n. 16 (T.T.A.B.1985); *Ex Parte Peerless Confection Co.*, 142 U.S.P.Q. 278, 280 (Comm.Pat.1964) (citing *Trademark Manual of Examining Procedure* ¶¶ 1603.09, 1605.07 (Rev.Dec.1983)). Indeed, as stated above, the Commissioner of Patents and Trademarks found these background designs immaterial when he approved the amendments to the original Day–At–A–Glance ® and Month–At–A–Glance ® registrations, which changed these designs. PX 290, at 7384; PX 292, at 7453; PX 294. If that change in the background designs is immaterial, then it necessarily follows that dropping the background design, as CAW has done, is also immaterial. *See In re Envoys U.S.A., Inc.* 221 U.S.P.Q. 646, 647 (T.T.A.B.1984) (applicant's adoption of the word portion of registrant's mark but not the design element did not lessen the likelihood of confusion).

Accordingly, the Court arrives at the indisputable conclusion that CAW's use of "At A Glance" on its Appointbook ® line is confusingly similar to the At–A–Glance ® Trademarks used on the At–A–Glance ® line of appointment books and diaries.

### c. *Competitive Proximity*

■ The third *Polaroid* factor is "competitive proximity," which should be measured, in part, in connection with the first two *Polaroid* Factors. *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1226 (2d Cir. 1987). "Competitive proximity" is concerned with confusion as to the source of the products, *id.*, and involves an analysis of the market for the products at issue. Confusion is more likely when the respective companies compete in the same market. *See Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 709 (2d Cir.1982); *Eaton Allen Corp. v. Paco Impressions Corp.*, 405 F.Supp. 530, 533 (S.D.N.Y.1975).

The appointment books and diaries made by CAW and Cullman are sold in the same market through the same distribution channels. Hargrove 95; H.C. Norris 674, 676. This product proximity increases the likelihood of consumer confusion. *See Centaur Communications*, 830 F.2d at 1226; *Lord Jeff Knitting Co. v. Warnaco, Inc.*, 594 F.Supp. 579, 581 (S.D.N.Y.1984). Moreover, the CAW and Cullman products perform identical functions for the consumer.

Compounding the likelihood of confusion in this case is the fact that retail stores typically carry only one line of appointment books and diaries. H.C. Norris 577–80, 752; Peterson 70–71. As Coleman Norris testified:

Q. If somebody went in a store and asked for a Day–At–A–Glance or Week–At–A–Glance, Success store, [he] might be given a product such as exhibit 33 [CAW's infringing product] true?"

A. Absolutely, or a Guilford product or a Southworth product.

H.C. Norris 752. Mr. Norris' qualifying words after "absolutely," however, make

little sense in the context of the products at issue. Just as a Success store would not carry At–A–Glance ® products, it would not carry Guilford or Southworth products. Thus, the fact remains that a customer looking for a product in a store carrying CAW's products will only see CAW's infringing products with "At A Glance" on them. In addition, because the stores generally only carry one company's line, the consumer will not see the CAW products and the At–A–Glance ® products side-by-side and will not be able to compare the two companies' products and marks. Peterson 72. This increases the likelihood of confusion. *Cf. Union Carbide Corp. v. Ever–Ready, Inc.*, 531 F.2d 366, 382 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976); *McDonough Power Equip., Inc. v. Weed Eater, Inc.*, 208 U.S. P.Q. 676, 685 (T.T.A.B.1981).

### d. *Bridging the Gap*

■ A trademark owner that makes a product related to, but not competitive with, another company's product may sue to enjoin an infringement of its trademark on the other company's noncompetitive product if the trademark owner shows that it might some day bridge the competitive gap. *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 48–49 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). In this case there is no gap to bridge. The appointment books and diaries made by CAW are competitive with, and not merely related to, Cullman's At–A–Glance ® line.

### e. *Actual Confusion*

■ The Lanham Act requires only a showing of likelihood of confusion. *See, e.g., Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986). This is to allow a plaintiff—like Cullman—to sue to protect its rights before widespread actual confusion occurs and can

be proved. *See, e.g., Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 709 (2d Cir.1982). However, because CAW deliberately copied the At–A–Glance ® Trademarks with, as we found above, the intent to improve their competitive position by trading on the name of the industry leader, actual confusion should be presumed. *See Invicta Plastics (USA), Ltd. v. Mego Corp.*, 523 F.Supp. 619, 624 (S.D.N.Y.1981). An intentional infringer is presumed "to have intended to create a confusing similarity of appearance" and to have succeeded in that endeavor. *Perfect Fit Indus. v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir.1980).

In spite of the short sales period,[26] there was one instance of actual confusion presented at trial in which the Farmington, Michigan Public Schools System issued a purchase order for "Success Monthly–at–a–Glance Academic Planner[s], No. AY 173–00" which was received by Cullman in March 1989. PX 309; Hargrove 169–70. It may be inferred from this purchase order that the purchaser confused the Success ® and At–A–Glance ® lines. Coleman Norris tried unsuccessfully to rebut this evidence of actual confusion by testifying that CAW did not use "Month At A Glance" on an academic product for the 1988–89 year. H.C. Norris 576. But CAW did—for the first time—use the words "Month At A Glance" as part of the name of a monthly academic product in its 1990 catalog. *Compare* PX 149, at 37 *with* PX 148 at 37; H.C. Norris 728. Accordingly, this misdirected order evidences some actual confusion that is worthy of consideration.[27] *See John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d at 978; *Purofied Down Prods. v. Puro Down Int'l*, 530 F.Supp. 134, 135 n. 2 (E.D.N.Y.1982).

Finally, we may infer from the vast increase in sales of CAW's 1989 appointment books and diaries that bear the At–A–Glance ® Trademarks—40.2%—that con-

**26.** The sales period for dated products is only three to four months at the end of each year. Hargrove 168–69.

**27.** There was testimony that the purchaser may have also been confused by one of Keith Clark's

other lines. H.C. Norris 575. However, because the purchaser asked for a "Success ®" planner, we certainly may infer that at least some of the confusion was caused by CAW's use of "At A Glance."

sumers have actually been confused into purchasing CAW's products by its use of "At A Glance." PX 308. Accordingly, in light of all of the foregoing, we find that this factor tips in favor of Cullman.

### f. CAW's Bad Faith

██ While intentional infringement need not be proven in order to establish liability under the Lanham Act, it signifies bad faith and gives rise to a presumption of likelihood of confusion. *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258–259 (2d Cir.1987). In this case, there is clear evidence of bad faith.

██ CAW gave up eleven years of "good faith efforts" to avoid confusing "trademark terminology" in an effort to gain a competitive advantage and to draw customers away from At-A-Glance ®. It did so by using the identical words of the At-A-Glance ® Trademarks to attract new customers. This is undeniably a case of bad faith. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179–80 (9th Cir.1988); *see Perfect Fit Inds., Inc. v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir.1980); *Varitronics Systems, Inc. v. Merlin Equip., Inc.*, 682 F.Supp. 1203, 1206 (S.D.Fla.1988). Moreover, Coleman Norris' testimony that he attempted to come as close to the At-A-Glance ® Trademarks as the law would allow—by copying the words but not the simple background design—supports an inference of bad-faith intentional infringement. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 977 (11th Cir.1983); *see Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1543 (11th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987). This intentional infringement has succeeded in producing a dramatic increase in CAW's sales of Appointbook ® products that bear the At-A-Glance ® Trademarks. *See supra* at 111, 131. Thus, this factor also weighs in Cullman's favor.

### g. Quality of the Products

Although Cullman asserts that the defendant's products are of lesser quality, and thus, that the use of "At A Glance" on these products has a negative impact on the At-A-Glance ® business' goodwill, we conclude that the products are of approximately the same quality. While the plaintiff may use different or better wire binding than the defendant, the defendant, at some extra expense, perforates the corners of the pages so that the current date may be easily marked. Accordingly, this factor favors neither party.

### h. Sophistication of Relevant Buyers

A factor related to the similarity of the marks and competitive proximity of the products (Part II, Sections B(1), (b) and (c) *supra*) is the degree of care likely to be used by potential customers in selecting the product. *E.g., Markel v. Scovill Mfg. Co.*, 471 F.Supp. 1244, 1251 (W.D.N.Y.), *aff'd*, 610 F.2d 807 (2d Cir.1979). This factor also weighs in favor of Cullman.

The appointment books and diaries made by Cullman and CAW are purchased by the same types of customers. Given the low retail price of these products, it is not likely that the average consumer will spend much time examining them. *See Miller Brewing Co. v. Carling O'Keefe Breweries*, 452 F.Supp. 429, 448 (W.D.N.Y.1978). Instead, the consumer, who generally purchases only one such product a year, will recognize the words At-A-Glance on the cover and purchase the product that bears that mark—whether it is a book made by Cullman or CAW. *See McDonough Power Equip., Inc. v. Weed Eater, Inc.*, 208 U.S. P.Q. 676, 685 (T.T.A.B.1981) (likelihood of confusion analysis "takes into account the fallibility of memory of the average purchaser and the fact that the average purchaser of infrequently bought items normally retains[s] only a general or vague recollection of trademarks.") CAW, by exploiting Cullman's trademarks on its products, is also using the established goodwill and reputation of At-A-Glance ®. Thus, CAW's products are likely to be mistakenly purchased by customers who want an At-A-Glance ® product to replace the one they had in years past, thereby causing Cullman severe injury.

### i. Equity

A balancing of the equities between the parties is the final factor that courts con-

sider in determining likelihood of confusion. *See Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F.2d 531, 536 (2d Cir.1964). The proof of CAW's bad-faith, intentional infringement of Cullman's At-A-Glance ® Trademarks strongly demonstrates why the equities tilt heavily in Cullman's favor. Moreover, Cullman and its predecessors have spent millions of dollars over many years to develop At-A-Glance ® as the leading brand in the market for appointment books and diaries. Cullman spent approximately $45 million to acquire the trademarks, goodwill and customer following of this business. CAW now seeks to reap the rewards of this substantial investment of time, effort and money. Equity will not assist CAW in this endeavor. See *supra* at 117.

Accordingly, in light of all of the foregoing, we conclude that, under the applicable federal law,[28] Cullman is entitled to an injunction against CAW's infringement of the At-A-Glance ® trademarks on and with respect to appointment books and diaries.

## 2. CAW Has No Defense to Its Infringement On and With Respect to Appointment Books and Diaries

As stated in Section II, A, *supra,* CAW has failed to prove its defense of prior use. Therefore, the remaining defenses to be addressed by us are the fair use defense under 15 U.S.C. § 1115(b)(4) and the eq-

uitable defenses of laches waiver and estoppel. CAW has not met its burden with respect to these defenses either.[29]

### a. CAW's Use of "At A Glance" is Not "Fair Use"

Section 33(b)(4) of the Lanham Act would provide CAW with a limited defense only if it could establish:

That the use of the name, term, or device charged to be infringement *is a use, otherwise than as a trade or service mark,* of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or *of a term* or device *which is descriptive of and used fairly and in good faith only to describe* to users the goods or services of such party, or their geographic origin.

15 U.S.C. § 1115(b)(4) (emphasis added). To meet its evidentiary burden of establishing this "fair use" defense, CAW must show: (1) that the At-A-Glance ® Trademarks are descriptive; (2) that CAW's use of "At A Glance" on and with respect to appointment books and diaries is solely descriptive; and (3) that CAW is using "At A Glance" fairly and in good faith. *See Zatarains, Inc. v. Oak Grove Smokehouse Inc.,* 698 F.2d 786, 796 (5th Cir.1983); *Frito-Lay, Inc. v. Bachman Co.,* 704 F.Supp. 432, 436 (S.D.N.Y.1989). *Girls Clubs of America, Inc. v. Boys Clubs of America,*

**28.** We note that Cullman is entitled to the same relief under the law of the State of New York. For instance, since we have found that consumers are likely to be misled or confused, the state unfair competition laws are satisfied. *See 20th Century Wear, Inc. v. Sanmark-Stardust, Inc.,* 747 F.2d 81, 93 (2d Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1755, 84 L.Ed.2d 818 (1985); *Perfect Fit Indus., Inc. v. Acme Quilting Co.,* 618 F.2d 950, 953 (2d Cir 1980). Likewise, the State anti-dilution statute is satisfied by our conclusion, in addition to the likelihood of confusion, that the mark is suggestive or at the very least, descriptive with a secondary meaning. *See* N.Y. Gen. Bus. Law § 368-d (McKinney 1984); *see Sally Gee, Inc. v. Myra Hogan, Inc.,* 699 F.2d 621, 624 (2d Cir.1983); *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,* 42 N.Y.2d 538, 541-542, 399 N.Y.S.2d 628, 630, 369 N.E.2d 1162, 1163 (1977).

**29.** As stated in note 8, *supra,* we assume that CAW has abandoned its claim that Cullman's

registrations be cancelled because the term "At A Glance" with a time designation has become the common descriptive name of calendar products. In other words, the claim is that the marks have become generic. Although Paragraph 64 of CAW's Post-trial Proposed Conclusions of Law does contain one sentence on this defense, CAW does not point to any portion of the record to support this claim. The Court concludes that even if the defense was not abandoned CAW did not meet its heavy burden of proof. *See Frito-Lay, Inc. v. Bachman Co.,* 704 F.Supp. 432, 434 (S.D.N.Y.1989) ("[C]arrying this burden generally requires such evidence as consumer surveys, dictionary definitions, newspapers and other publications, generic use by competitors, testimony of lexicographers, generic use of the term by mark's owner, and use of the term by third parties in trademark registrations."); *see also Gear, Inc. v. L.A. Gear Calif., Inc.,* 670 F.Supp. 508, 515 (S.D.N.Y.1987).

*Inc.,* 683 F.Supp. 50, 54 n. 4 (S.D.N.Y.), *aff'd,* 859 F.2d 148 (2d Cir.1988).

### (i). The At–A–Glance ® Trademarks are Suggestive: CAW Has No "Fair Use" Defense

The "fair use" defense is available only in actions involving descriptive trademarks. *See Zatarains, supra,* 698 F.2d at 796. As explained *supra,* at 119–20, the At–A–Glance ® Trademarks are suggestive. Accordingly, the "fair use" defense is not available to CAW. *See Engineered Mechanical Servs., Inc. v. Applied Mechanical Technology, Inc.,* 584 F.Supp. 1149, 1158 (M.D.La.1984).

### (ii). CAW's Use of the At–A–Glance ® Trademarks in Connection with Appointment Books and Diaries is Trademark Use

Even if the At–A–Glance ® Trademarks are descriptive, CAW must establish that its use of "At A Glance" on appointment books and diaries is descriptive use rather than trademark use. *Zatarains, supra,* 698 F.2d at 791. Unequivocally, imprinting a mark boldly on the face of a product—as CAW has done here—constitutes trademark usage. *See* 15 U.S.C. § 1127; *Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.,* 477 F.2d 150, 154–55 (6th Cir.1973). There is no other way to characterize the exact copying of the At–A–Glance ® Trademarks' "terminology" directly on the covers and fly sheets of CAW's appointment books an diaries. CAW is using "At A Glance" as a symbol to attract public attention—which is trademark usage. *See Safeway Stores, Inc. v. Safeway Properties, Inc.,* 307 F.2d 495, 499 (2d Cir.1962); *Chun King Corp. v. Genii Plant Line, Inc.,* 403 F.2d 274, 276, 159 U.S.P.Q. 649, 56 C.C.P.A. 740 (1968).

In *Venetianaire Corp. v. A & P Import Co.,* 429 F.2d 1079 (2d Cir.1970), the Court held that the prominent use by the defendant of plaintiff's registered trademark "Hygienic" as a purported description on the packaging of the defendant's mattress covers was not "fair use." *Id.* at 1081–82. The same result is warranted here, where CAW is printing the At–A–Glance ® Trademarks prominently on the covers and fly sheets of its directly competitive products. The fact that CAW's Success ® and Appointbook ® trademarks are also on the products does not negate the trademark usage of At-A Glance ®, "especially since ... [At–A–Glance ®] appears on the [product] as prominently as the housemark." *Frito-Lay, Inc. v. Bachman Co.,* 704 F.Supp. 432, 436 (S.D.N.Y.1989); *see Chun King Corp., supra,* 403 F.2d at 276; *Tree Tavern Prods. Inc. v. Conagra. Inc.,* 640 F.Supp. 1263, 1269 (D.Del.1986). Furthermore, as mentioned above, the Success ® mark is completely hidden when the products are on display.

In determining whether words are used descriptively or in a trademark sense, the inquiry must focus on the meaning of the words to prospective purchasers. *See Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d 694, 699 (2d Cir.1961). CAW has offered no evidence on this issue. Cullman, however, has offered evidence on this point: At–A–Glance ® is the leading brand that consumers recognize and ask for by name. See *supra,* at 103, 122–23. Use of "At A Glance" by CAW on and with respect to appointment books and diaries will cause consumers to associate these books with the At–A–Glance ® line. See *supra,* at 104, 127–131. This usage by CAW is, therefore, trademark usage.

### (iii). CAW's Use of the At–A–Glance ® Trademarks In Connection with Appointment Books and Diaries Is Not Good Faith "Fair Use"

CAW's "fair use" defense must also fail because CAW is not using "At A Glance" fairly and in good faith. By its terms, the statutory defense only applies to terms "used fairly and in good faith." 15 U.S.C. § 1115(b)(4); *see Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1027 (7th Cir.1979), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). As discussed previously, CAW adopted in bad faith the identical words of the At–A–Glance ® Trademarks on similar products immediately following the sale of the At-A–Glance ® business. See *supra,* at 111,

131; *Venetianaire Corp., supra,* 429 F.2d at 1083. CAW adopted these marks to trade on the good will and reputation of the At-A-Glance ® brand. CAW is therefore precluded from asserting the "fair use" defense. *See Frito-Lay, Inc. v. Bachman, supra,* 704 F.Supp. at 432.

### (iv). There is No "Fair Use" Because Consumer Confusion is Likely

The "fair use" defense does not encompass use that will lead to consumer confusion as to the source or origin of the goods at issue. *See Zatarains, Inc., supra,* 698 F.2d at 791; *Venetianaire Corp., supra,* 429 F.2d at 1082. The primary purpose of the trademark laws is to protect the public from confusion; hence, the confusing use of another's trademark is not within the purview of the "fair use" defense. *See Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 206 n. 9 (2d Cir.1979).

Cullman has demonstrated that CAW's use of the identical words of the At-A-Glance ® trademarks on and with respect to directly competitive products is likely to cause consumer confusion. *See supra,* at 127–31. Accordingly, CAW's "fair use" defense must be rejected on this ground as well.

### (v). CAW's Use of "At A Glance" in Its Catalogs

We would like to point out that the only uses which may be characterized as "fair" in this litigation are those where the words "At A Glance" are used, without hyphens, in a sentence in a catalog or advertisement. For example, CAW's catalogs from 1941–1973 contained variations of following descriptions of the Daily Date Calendar:

"Large daily date easily seen at a glance from fifteen to fifty feet away...."

*E.g.* PX 123, at 2406; PX 124, at 2412; PX 125, at 2420. Similar uses by other manufacturers can be found in the Frantz files. PX 306, at 1148, 1164. Mr. Frantz, Sheaffer Eaton's "policeman" of the At-A-

Glance ® Trademarks, himself admitted at trial that the words could not be taken out of the English language, Frantz 324, 407, and the letters in his files support this concession. PX 306 at 916, 1077, 1429.

By adopting this statement that the words cannot be taken out of the English language, we do not mean, however, to give CAW, or others for that matter, open license to use "At A Glance" indiscriminately, and in an attempt to trade off the At-A-Glance ® Trademarks, in catalogs and other literature.[30] There are other words, and perhaps better ones, which can be used to perform the same functions, *i.e.,* "weekly," "daily," "week on a page," "logically arranged," "week on two pages," "concise," "glimpse," "week per view," etc.

### b. CAW has No Equitable Defense with Respect to Appointment Books and Diaries

CAW asserts that the equitable defenses of laches and estoppel preclude the injunctive and other relief that Cullman seeks. With respect to appointment books, we conclude otherwise.

As discussed above, CAW's use of the term "At A Glance" with a time designation on its Appointbook ® line was a new and expanded use. From 1977 through 1988, CAW saw no need to use the term to "describe" the "format" of these products. Even though Coleman Norris testified that he believed it was self-evident and logical to put "At A Glance" on the cover and fly pages of the Appointbook ® line, CAW did not use "At A Glance" on or with respect to these products during the eleven year period when Sheaffer Eaton and CAW both made competing lines; rather the terms "weekly," "daily," "monthly," "week on 2 pages," "one week per 2 page spread," "one day per page," etc. were employed. The reason CAW did not do so is clear; CAW was acting in accord with its promised "good faith efforts" to avoid confusing and deceptive uses of trademark terminology. PX 168; H.C. Norris 604–08; PX 169; see *supra* at 108–10.

---

**30.** Nor, as the rest of this opinion makes painstakingly clear, do we mean to indicate that it

would be fair to use the term on a product.

Only when the At-A-Glance ® business was sold did CAW dramatically commence using "At A Glance" on the covers in a trademark sense on its competing line, leading to the instant action. See *supra* at 110–11. It is true, however, that CAW had been using "At A Glance" on a few of its desk and wall calendars for a period of years and that this use was tolerated by Cullman's predecessors. Thus, we are faced with the situation where a company, whose use of another's trademark terminology was tolerated by the other over a period of many years with respect to a few noncompeting items, greatly expanded its use of trademark terminology to a different but related product line. CAW, asserts that it has the right to so expand, pointing to cases where a "prior user's" rights extend to products within a natural zone of expansion. *See e.g., J. Wiss & Sons v. W.E. Bassett Co.*, 462 F.2d 567, 569, 174 U.S.P.Q. 331 (1972); *J.C. Penney, Co. v. Security Tire and Rubber Co.*, 382 F.Supp. 1342, 1344 (E.D.Va.1974). These cases are inapposite as CAW was not, as determined above in Part II, Section A, *supra*, a *prior* user, only a *tolerated* user. Furthermore, the evidence establishes that the expanded usage to directly competitive products was not undertaken in good faith. See *supra* at 26, 72–74. Accordingly, CAW's "unclean hands" preclude the availability of equitable defenses with respect to its use of "At A Glance" on the Appointbook ® line.[31] *Grotrian, Helfferich, Schulz, Th. Steinweg, Nachf., v. Steinway & Sons*, 523 F.2d 1331, 1343 (2d Cir.1975); *Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F.Supp. 866, 874 (E.D.N.Y.1978); *Cuban Cigar Brands N.V. v. Upmann Int'l, Inc.* 457 F.Supp. 1090,

1098–99 (S.D.N.Y.1978), *aff'd*, 607 F.2d 995 (2d Cir.1979).

### 3. Cullman Is Not Entitled To Injunctive Relief Against CAW'S Historic Use of the AT-A-GLANCE ® Trademarks on CAW'S Products

Cullman concedes that CAW's historic usage of "At A Glance" on desk and wall calendars is of lesser concern to it than CAW's recent infringement on its directly competitive appointment books and diaries. *E.g.,* Pltf.Mem. at 108. While it expanded its use of "At-A-Glance" to its Appointbooks ®, CAW's also continued its limited historic usage. Thus, for the 1989 editions, CAW used "At A Glance" on two non-appointment book products: (1) the No. 1252–0 Weekly Calendar, PX 22, and (2) the recently discovered "Heinz Interest and Discount Time Teller and Desk Calendar," DX FG. Since these products do not compete with the heart of the At-A-Glance ® line, and in light of the fifty year history between CAW and Cullman's predecessors, it would not be equitable to enjoin CAW's continued manufacture and distribution of these products. There is no evidence that consumers will be confused as the products are designed to meet different consumer needs; the No. 1252–0, unlike an Appointbook ®, is not a product which a consumer would substitute for an At-A-Glance ® product. Furthermore, because of our decision to enjoin further production of Appointbooks ® with the words "At A Glance ®" on them, there is little likelihood of an increase in consumer confusion.

This is not to say, however, that CAW is entitled to continue its use in catalogs of "At A Glance" as the name of products. *See e.g.,* PX 148, at 23.[32] This is trademark

---

31. We note that even if CAW were allowed the equitable defenses, the result would not be different as CAW did not meet its burden of proving the defenses. With regard to laches, CAW did not establish: (1) that Cullman had knowledge of CAW's use of its At-A-Glance ® Trademarks on the Appointbooks ® for an extended period of time; (2) that Cullman inexcusably delayed in taking action; and (3) that CAW was prejudiced by any alleged delay. *See* Pltf.Mem. at 80–88.

Furthermore, as to the estoppel defense, CAW did not and could not show: (1) that it had built up "goodwill" in the term "At A Glance" with respect to these products; (2) that representations or conduct by Cullman or its predecessors allowed it to expand its usage to directly competitive products; and (3) that an injunction as to these products would be prejudicial. *See id.* at 88–90.

32. We note that the calendar previously called "Three Months at-a-Glance Poster Calendar" or the "Three–Month At–A–Glance Wall Calendar"

usage. Furthermore, while the words "At A Glance" cannot be taken out of the English language, CAW must avoid using the term *with hyphens* in the text next to the products, see *id.*, and may only use it fairly within a sentence.

### III. CONCLUSION

For all of the above reasons, we hold that CAW infringed Cullman's At-A-Glance ® Trademarks by utilizing the marks on their directly competitive Appointbook ® line of appointment books and diaries and that CAW has no defense, equitable or statutory, to such infringement. As Cullman has proved that consumers are likely to be confused as to the source of the goods in question, it is entitled to permanent injunctive relief, albeit not as broad as it would like.

Accordingly, it is hereby

ORDERED that the defendant Columbian Art Works, Inc., is permanently enjoined from using "At-A-Glance" or any variation of that phrase with a time designation (*e.g.*, "Day-At-A-Glance", "Week-At-A-Glance", "Month-At-A-Glance") in any form or logo (*e.g.*, with or without capitalization or hyphenation) on any Appointbook ® product or any other kind of appointment book or diary it now produces or will produce in the future; it is

FURTHER ORDERED that the defendant is permanently enjoined from using "At-A-Glance" or any variation of that phrase with a time designation (as described above) as the name of a calendar product or in a hyphenated manner in the descriptive text of its catalogs or other promotional matter, with the exception of two of its products, the No. 1252-0 Weekly Calendar and the Heinz ® Time Teller; and it is

FURTHER ORDERED that the defendant destroy all infringing articles in its custody or control.

Counsel are directed to appear at a status conference on July 31, 1989, at 9:40 a.m. so that we met set the matter down for further discovery and an eventual trial on the issue of damages.

SO ORDERED.

is now called the "Three-Month Wall Planner." Thus, as to this product that issue is moot.